Parker, J.,
(after stating the material facts.) Three questions arise in this case, and have all been pressed by the counsel for the defendants.
1st. Is Brooks entitled to receive any wages, or, in other words, did not the capture put an end to the contract between him and the owners ? If not, did he not dissolve it himself by returning to Boston, instead of pursuing the ship and completing the voyage ?
2d. If entitled at all, is he not entitled in proportion to services actually performed — in which case, do not his wages stop at the time of the capture ?
3d. If entitled to recover any thing, is not his demand to be made upon the underwriters, and not upon the owners ?
As to the first point, whether the capture extinguished the contract between Brooks and the owners, I am fully satisfied that it did not. Capture and condemnation would undoubtedly so operate, — so capture and ransom in England; and in case of recapture and salvage, the seamen are to be paid pro tanto, according to the freight earned. All these instances show that a temporary detention, or even a capture with intention to condemn, but the intention never carried into effect, will not work a forfeiture, or loss of wages. The case of Bergstrom vs. Mills, reported in Espinasse, settles this point. It'is true this decision was at NisiPrius, but being acquiesced in, and being recognized, by Lord Ellenborough, in his argument in the case of Beale vs. Thompson, on a writ of error from the Common Pleas, no doubt exists that it is considered as law. Others of the cases cited show, also, that a mere capture, without any subseI * 43 ] quent proceedings * tending to change the property, or destroy the freight, would not operate a loss of wages. [ take it to be clear, therefore, that a taking of the vessel by an enemy, in a state of declared war, without any subsequent act, does not, ipso facto, dissolve the contract respecting wages, but that the *47 seamen may, or may not, recover their wages notwithstanding such a capture, according to the circumstances of the case.
No decision has been cited, tending to establish the contrary prin ciple, except that from Robinson’s Report of Admiralty Cases, (3) but as, in that case, the seamen entered upon the voyage under a special contract for the run, little analogy exists between that and the one under consideration. Where the seaman chooses to put his whole earnings upon the happening of a contingency, which he may da for the chance of greater wages than common if he succeed, he waives the legal advantage of his profession.
But it is said this contract is dissolved because the plaintiff did not pursue the ship, and complete the voyage to London. To establish this point, it should be shown that the conduct of the seamen amounted to a desertion of the vessel and consequent forfeiture of wages. If it appeared, in this case, that the ship was near the place to which the sailor was carried, that he knew of her being there, and was under such circumstances as that he might, without difficulty, have repaired to her and resumed his duty, then his departure to Boston might well be deemed a desertion. But no such facts appear. On the contrary, the presumption from the facts agreed is violent, that he did not know where the ship was to be found, that he had no means of resorting to her, and that his departure for Boston was a matter of necessity, and not of choice.
It is contended, then, in the second place, by the counsel for the defendants, that, admitting the contract was not dissolved by the capture, and that the sailor is entitled to some wages, he is entitled only in virtué of services actually performed on board the vessel, and so his wages ceased at the time of capture. This point seems to be otherwise settled by the case of the sick sailor * left at Philadelphia, (4) and by the case of Beale vs. [ * 44 ] Thompson. From these two cases, and some others cited at the bar, it appears that wages have been recovered even where services could not have been performed. What, then, is the rule? I conceive it to be founded in reason, and the nature of the contract ; and it is this, that, where the seaman, in consequence of his engagement in the ship, becomes disabled from obtaining employment in any other way, if the ship makes a prosperous voyage by earning freight, he shall have his wages up to the time when he might have removed the disability by returning to his own vessel, or finding employment in some other. That is all that is asked for in the present case, it being stated that he went to Boston as soon as possible, and no wages being demanded after his arrival at Boston
*48 The last question is, against whom this demand exists. The counsel for the defendant says, against the underwriters; and he produces the dictum of a judge, which states that abandonment dissolves all contracts, &c. But no case is produced showing that such demand ever was made on underwriters ; on the contrary, the case of Lutwidge vs. Grey & Al. settles the point the other way. This case is cited at length by Abbot in his Treatise on the Law of Shipping, and proves satisfactorily that, in England, the transfer of property in freight from owners to underwriters does not affect the contract between ship-owners and freighters. The principle now contended for would produce infinite confusion and vexation to mariners, to whom every facility should be given by the laws for the recovery of their wages. Instead of looking to the owner, with whom they contracted, and whose responsibility they know, they are to be turned over to twenty or more underwriters, whose names they never heard, and of whose interest in the ship they are wholly ignorant. Such a principle cannot be maintained in this country, and probably never has been in any other.
Upon the whole matter, then, I am very clearly of opinion that, upon the state of facts submitted, the plaintiff is entitled by law to recover his wages up to the time of his arrival in Boston, as he has demanded.
Thatcher, J.
I am of opinion that, on the application of the general principles of law to the facts agreed by the parties, the plaintiff is entitled to recover his wages to the time of his arrival at Boston. (Here the judge read from Abbot’s Law of Shipping, page 284, &c.] It is a settled principle, that seamen are to receive wages on the successful termination of the voyage, unless they are guilty of a voluntary desertion from the ship. In this case, there was no voluntary act of the plaintiff which can be construed into a desertion. If, when he was set at liberty in France, he had neglected any due means of returning to the ship, 1 should be prepared to say that he had lost his right to wages. But when it is considered that he was in a strange country, at the distance of several hundred miles from the ship; ignorant, for aught that appears, where she was ; and, even had he known where she was, without the means of conveying himself to her, — it does appear to me that no loches are imputable to him. He pursued the course of conduct most favorable to the interests of the owners, in returning, as soon as he could, to Boston, where he could put him self into other employment. By this means, they saved the expense of his support and wages for several months. There is, then, no hardship upon them. Indeed, the case of Chandler vs. Greeves would have gone far to support a demand for wages, in this case, up *49 to the delivery of the cargo in the port of London. The case of Bergstrom vs. Mills is, in my mind, decisive of the present action.
But the counsel for the defendants have suggested another objection, viz., That the abandonment by the owners to the assurers has extinguished the contract between the owners and mariners, and that the plaintiff’s action, if he has any, lies against the underwriters, and not against the former owners. This idea does not appear to me to be supported either by authorities or the reason of the thing. No authority has been produced which countenances this objection ; and the case of Lutwidge vs. Grey is directly in point against it. Neither on the ground of reason can the objection be maintained. Underwriters are unknown to mariners, and are frequently scattered in different countries. Owners, and their circumstances, are known to them, but they have no means of knowing underwriters; nor, if *they had, did it ever [ *46 ] enter their minds that they were to resort to them for their wages. 1 will not say there may not be a case in which mariners may have an action against assurers for their wages; but this would be the acquisition of a new right, and would not necessarily imply an extinction of the original contract between the owners and mariners
Sedgwick, J.
(After stating the case, and particularly the agreement between the parties.) By this agreement it appears that a good deal that has been said by the counsel for the defendants is unimportant to be considered, because, by it, all questions relative to the declaration are waived, and the rights of the parties are brought directly before the Court. The first inquiry is, whether the plaintiff is entitled to receive any thing; and if so, the second will be, for what period of time.
In this case, the full freight was paid. Freight, in the quaint language in which the rule is expressed, is the mother of wages ; and, whenever it is fully paid, there is no doubt that the general rule is, that the seaman is entitled to all his wages, according to stipulation, if there be any, and if not, upon a quantum meruit — provided there has been no misbehavior on his part; and here it is not pretended that the plaintiff did misbehave.
In this case there was a capture, and it is said that, by it, the contract was dissolved, and that, if it was not dissolved ab initia, it was at least determined by it, from the time of the capture. If either of these positions were true, being exceptions from the general rule, it. would be incumbent on the defendants to prove the exception, and to bring their case within it. And this seems to be done, if what is said by Sir William Scott, in 4th Rob. 143. be taken in its full extent, as evidence of the law upon this subject. This is the *50 opinion of a single judge only, (though certainly of great learning and ability,) and the case is not so stated at large that we can, with certainty, determine whether he might not be influenced in his judgment, as to the principles which he lays down generally, by the particular circumstances of the case. The plaintiff there was hired for the run, and it might appear, if the contract was fully [ *47 ] disclosed, * that, by the very terms of it, the performance of the service was a condition precedent, according to the principle laid down by Abbot, (5) and illustrated by the case of Cutter. It is, however, confessed that the decision of the judge does not seem to have been much, if at all, influenced by the consideration of that circumstance. If this case is taken as it was intended by the counsel for the defendants that it should be, it is directly in opposition to the opinion of Lord Eldon, in the case of Bergstrom vs. Mills. (6) which opinion was afterwards approved by all the judges of the Court of King’s Bench, in the case of Beale vs. Thompson. (7) Indeed, I consider the case of Beale vs. Thompson, as going far to prove the right of the plaintiff to recover in this case. There the ship was seized and detained by a foreign government. The plaintiff was taken from on board, and imprisoned on shore six months. The ship and the seamen were at last released ; and the plaintiff went on board and did his duty until the vessel arrived at the place of her destination. It was determined that he was entitled to recover his wages during the whole voyage, including the time the ship was detained, and the plaintiff imprisoned, and on shore. It is true that the court in that case considered, if the imprisonment of the plain tiff had suspended his right, for that time, to his wages, that his-being afterwards received on board by the master, without objection, amounted to a dispensation of the service in the interval, and entitled him to his wages according to his original contract. Yet it is man ifest that, independent of that circumstance, the court was of opinion that the plaintiff was entitled to recover for the whole time. The ground on which the claim of the plaintiff rests, in this case, seems to be established by the case of Chandler vs. Greeves, (8) from which it appears that a seaman, disabled in the course of his duty, is, in every instance known to the courts of admiralty, considered as entitled to his whole wages, although he has not performed the whole service. Now, in this case, the plaintiff was disabled, by the capture, from performing his service, as much as if disabled by sickness or wounds ; and be was as faultless as in any case that can be imagined.
*51 * I am the more disposed to respect the decisions, and [ * 48 ] adopt the principles, of the English courts on this subject, because I think it very desirable that, in maritime law, there should be a uniformity among all great commercial nations. I think, then, that, upon authority, the plaintiff is entitled to recover his wages for the whole time for which he has claimed them ; that is, until he arrived in Boston. And, on principle, I think his claim equally weL founded. Freight has been earned and paid ; the time of the plaintiff has been devoted according to his agreement, and will be wholly lost unless he recover in this action, while he has been guilty of no misbehavior, but is perfectly faultless. Had the plaintiff’ continued on board, there would, I presume, have been no question but he was entitled to wages until the crew were paid off in Lon'don — a time posterior to that to which his claim extends. In that case, the defendants would have received no benefit whatever from the plaintiff’s services, for the ship remained at St. Andero, and was not released until after he arrived in Boston; during the whole of which time, the defendants must not only have paid the plaintiff his wages, had he been on board, but have been at the expense of nis subsistence. The plaintiff’s demand, then, is less than the defendants would voluntarily have discharged, had he not been taken, forcibly and against his will, from his companions on board the ship, imprisoned in a strange land, and obliged to find his way home as well as he could. In this view of the subject, I can see nothing, in the relation between these parties, which renders it proper that the plaintiff should be subjected to the hardships which the defendants are inclined to impose upon him. Nor do I discern any object of public policy which would be attained by deciding that the plaintiff should not recover.
It is said that the plaintiff ought to be deprived of his wages because he did not rejoin the ship. I do not feel the force of this observation. There is no evidence - that it was in his power; or that he even knew where the ship was. He was at the distance of several hundred miles, in a strange land, and, for any thing that appears, a stranger to the language of the country. _ Under these circumstances, it is impossible for me to perceive * that it would be just to punish him with the loss of his [ *49 ] wages because he did not rejoin the ship.
What may be the effect of this judgment, as between the assured and underwriters, I think it unnecessary at present to inquire. But that the plaintiff ought not to be shifted off, from the defendants, with whom he made the contracl, to the underwriters, to whom he is a stranger, I am ready and willing to declare as my opinion. Indeed, this point is fully determined, by the case of Lutwidge and *52 Another vs. Grey and Others. (9) [Here the learned Judge read the case, as reported by Abbot, page 249, &c., of the English edition, and 196 of the American edition.] In that case, although Grey Go. had abandoned to the underwriters, who had received the goods, yet it was determined, in the House of Lords, that they were bound by their contract to pay the freight, and, in my opinion, very rightly determined. It would be most strange, and as inconvenient and mischievous as strange, if contracts, whether express or implied, for freight or wages, by an abandonment were to be dissolved, as respected the owners and master, and transferred thereby to the underwriters. It would be such a violation of all principle with respect to contracts, and the performance of them, as could not be endured.
Dana, C. J.
The Court have taken time to consider this cause, • and have conferred together upon it, in order to settle the point. We all concurred in the principles, and the result, as stated by my brother Parker. The case was submitted without any reference to the form of the declaration. Where no stipulation is contained in an agreed statement of facts submitted to the Court, such as whether the plaintiff is entitled to recover under the present form of action, &c., the Court take up the facts on the broad ground of equity We have done so in this case ; and, on the whole, are of opinion that the plaintiff recover his wages from the time of his shipment until his arrival at Boston.
[ * 50 ] * It appears to me unnecessary to go over the ground that has been trodden by my brethren, as it would be a useless expense of time, and loading the reports with needless repetitions of the same facts and arguments.
It will be understood that no decision is made, by this judgment, of a case in which it should appear that seamen had been hired to supply the place of the plaintiff, within the time for which he demands wages. That is not the present question, and it will be time enough to decide it, when it is regularly before the Court.(a)

 Page 143

 2 H. Black. 606

 Ab. on Shipping, 356, 347

 3 Esp. R. 36

 4 East, 560.

 H. Black. 506. in note

 Abbot, 249.

 Spaffard vs. Dodge & Al. 14 Mass. Rep. 66. — Hooper vs. Perley, 11 Mass. Rep 545. — Chandler vs. Greeves, 2 H. Bl. 606, note. — Hainey vs. The Tristram Shandy, Bees Ad. R. 414. — Ex parte Giddings, 2 Gall. 56. — Singstrom vs. The Hazard, 2 Peters’s R. 384, 446. — Wetmore vs. Henshaw, 12 Johns. R. 324. — Girard vs. Ware, 1 Peters's Civ. C. 142.— The Saratoga, 2 Gall. 164.