WILLIAMS (JORDAN v.). See Case No. 7,528.

---

## Case No. 17,724.

### WILLIAMS v. The JUNO.

[1 U. S. Law J. 154.]

District Court, D. Massachusetts. March, 1810.

SEAMEN'S WAGES — CAPTURE AND DETENTION — NEUTRAL SEAMEN.

1. Where an American (neutral) seaman was taken from on board an American vessel by a French cruiser, and the vessel ordered into a French port for adjudication, but subsequently recaptured by a Sicilian cruiser, and restored to the master on payment of salvage: *Held*, that such seaman, not having been able to return to his ship, was entitled to wages during the time of his detention on board the French cruiser, and for the whole voyage, at the stipulated rate; deducting his proportion of salvage.

2. The case of a neutral seaman thus detained, distinguished from the cases of detention of enemy seamen.

[This was a libel for wages by John Williams against the brigantine Juno, Samuel Page, master, and John Saunders and Samuel Upton, owners and claimants.]

Story & Saltonstall, for libellant.
Mr. Prescott, for respondent.

DAVIS, District Judge. The libellant, on the 10th of April last, shipped on board said brigantine as a mariner, on a voyage for Sicily and back to Salem, at the monthly wages of sixteen dollars. The vessel sailed on the 16th of April, and on the 29th of May following, when off Palermo, was stopped by a French privateer. The libellant with three other men was taken out, and the brigantine, under the command of a prize-master from the privateer, was.diverted from her port of destination, and ordered to some port where she could be under the control of the government of the French. About twelve hours afterwards, said brigantine was recaptured by a Sicilian armed vessel, carried safely to Palermo, and there surrendered to the master on payment of salvage. She returned to Salem on the 10th of January last past, the master having hired other men in the room of those taken out by the French privateer. The libellant was carried to Naples. and it not being in his power to rejoin the brigantine. he embraced the first opportunity of returning to the United States, and arrived at Salem on the 10th of December last, without receiving or earning of wages on board of the vessel by which he returned. He had received, previously to his separation from the brigantine, thirty-nine dollars, and now demands the balance of wages at the stipulated rate, as if he had performed the voyage.

The respondents contend, that the claim for wages is extinguished under the circumstances, or, at most, he is entitled only to a pro rata allowance to the time when the brigantine was captured as above mentioned, and his separation from said vessel; and if any allowance should be made for the subsequent portion of the voyage, a proportional deduction on account of the salvage paid, is insisted on. The cases principally relied on to maintain the ground of defence assumed by the respondents, relate to a hostile capture by an enemy in open war. But this is to be considered, not as a hostile capture, but as the arrest and detention of a neutral ship by a belligerent, for examination and adjudication. Cases of this description can scarcely be expected to be found in the English books; for that nation is seldom neutral.

Sir Wm. Scott seems to have determined, that where a vessel is captured, and a seaman is taken out, the claim for wages is extinguished, though the vessel be afterwards re-captured and carried to her port of destination. The Friends, 4 C. Rob. Adm. (Am. Ed.) 143. In this, however, he differs from Lord Eldon, in the case of Bergstrom v. Mills, tried at nisi prius the year preceding. 3 Esp. 36. But it is observable, that the ground of Sir. Wm. Scott's

decision, in the case mentioned, is not applicable to the present case. The mariner, on whose claim he decided, was "taken," as he observes, "as a British subject, liable, with all the rest of his countrymen, to the hazards and hardships of war." But the distinction suggested by Judge Peters, in the case of Howland v. The Lavinia [Case No. 6,797], appears to me altogether pertinent; and with him, "I conceive the situation of a neutral seaman, one of the crew of a neutral ship. carrying in for adjudication. and taken away from his ship, by the vis major, is not similar to the case of the sailor, as determined by Sir Wm. Scott." "He is not captured and carried off as a subject liable to the hazards of war, but as a citizen of a friendly nation, whose vessel must submit to search and adjudication." The policy of the law, extinguishing wages by capture, rests also, as I conceive, on another principle. One of the objects in view, as in the case of shipwreck, is to stimulate the mariner to the utmost exertion to prevent the impending peril. This principle has its full operation in the case of a hostile attack by an enemy. With the neutral detained for search, examination, or adjudication, it is altogether different. On a deliberate consideration of the case. therefore. and the principles applicable to it, I am altogether satisfied with the view of cases of this sort, as to the legal effect on wages. which has been taken by different judicatories in our country; and to consider the circumstances of this case, not as constituting a capture which defeats all rights and interests, but as a temporary interruption only. which does not extinguish a claim for wages; the seamen being at no fault, and the intended voyage, with a slight and transient interruption only. successfully accomplished. In this decision, I agree with the repeated determinations of Judge Peters, and with the supreme court of Massachusetts in the case of Brooks v. Dorr, 2 Mass. 39. And the principles of the case of Beale v. Thompson, 4 East. 546, appear to me also to support the present claim. I therefore decree to the libellant wages at the stipulated rate to the time of his return to Salem, deducting the $39 previously advanced, and his proportion of salvage.