SUCCESSION OF GUILLAUME DAZET SENAC.—J. M. DUPERU, and others, Appellants.

By the laws of France the widow becomes the tutrix of her minor child immediately after the death of her husband, and needs no letters of tutorship to act as s h; and, by the same laws, she is entitled to the enjoyment of all the property of her child, until he reach the age of eighteen, or be emancipated. A widow, residing in France, may oppose in the courts of this State, the homologation of the will of her husband, and stand in judgment for her child.

The testator, a resident of Louisiana, made an olographic will on the 8th of May, 1836. On the 10th of the same month, he married, and on the next day sailed, with his wife, for France, intending to reside permanently in that country. On the 10th of April, 1837, a child was born of the marriage, and in August, 1838, the testator died. *Held*, that under arts. 483, and 10, of the Civil Code, the will having been made in this State, its validity must be tested by the laws of Louisiana, and not by those of France.

A will is not revoked, under the laws of France, by the subsequent birth of a child. *Aliter*, in this State. Civ. Code, art. 1698.

The only exception to the rule laid down in article 483, of the Civil Code, "that persons who reside out of the State cannot dispose of property they possess here, in a manner different from that prescribed by its laws," is to be found in the 10th article of the Code; and it is only under the conditions mentioned in that article, that foreign laws are permitted to operate in the disposition of property in this State.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

MORPHY, J. This appeal is from a judgment declaring·null and void the last will and testament of the late G. D. Senac, on an opposition to its homologation by his widow, on the ground of the birth of a child, the offspring of the opponent's subsequent marriage with the deceased. The facts of the case are, that the late G. D. Senac, a native of France, who had long resided in this country, made his olographic will in this State on the 8th of May, 1836, whereby he made several legacies, and bequeathed their freedom to two of his slaves under certain restrictions. On the 10th of the same month, he married Marie Tourné, the opponent, of this city, and on the next day departed with her for France, where, on the 10th of April, 1837, she brought him a child. Senac died at Bagnières de Bigorre, on the 27th of August, 1838. The testimony shows that the deceased several times expressed to his friends his intention of passing the remainder of his life in France, and that his property here

consisted of one hundred shares of the stock of the Commercial Bank, of several slaves, and some notes and accounts.

*Schmidt*, for the legatees. The widow having no interest in the will, cannot sue to annul it. The capacity of the testator to dispose of his property, and the validity of such dispositions, must be determined by the law of his actual domicil. *Habilis vel inhabilis loco domicilii est habilis vel inhabilis in omni loco.* Journal du Palais, v. 13, p. 17. Story's Confl. of Laws, 398—402. The domicil of the testator was in France. By the laws of that kingdom the subsequent birth of a child does not revoke a will. Dalloz, Jurisp. XIX Siècle, v. 11, p. 191–2. Though the will should be, in other respects, annulled, bequests of freedom are valid under the general rule of the Roman law. Digest, 28, tit. 4, § 3.

*J. Seghers*, for the opponent.

MORPHY, J. The legatees deny the right of the opponent to sue in her own name, or as the widow of the deceased. It is said that her son, as an heir of the deceased, has an interest to set aside this will, but that she has none. We can see no reason to doubt the capacity of the opponent to stand in judgment for her child. By the laws of France, where she now resides, she became *ipso jure* the tutrix of her son on the death of her husband, and needed no letters of tutorship to act as such. But, independently of this right of suing on behalf of her child, the opponent has a personal interest in the matter, because, by these same laws, she is entitled to the enjoyment of all her child's property until he reaches the age of eighteen years, or is emancipated. Code Nap. arts. 390, 384.

On the merits, it is contended that the will of Senac did not become void, by the birth of a child from his subsequent marriage with the opponent. It is admitted that under art. 1698 of the Civil Code, there would be no question as to the nullity of this will, had the testator continued to reside in Louisiana; but the argument is, that when the validity of a will is in question, reference must be had to the time of the death of the testator. That, at that time, he was residing in France, and that by the laws of his new domicil which are to govern, the subsequent birth of a child did not invalidate his will. It appears to us that this case presents but the single question, whether the law of Louisiana, under which this will was made,

and which pronounces its nullity in case the testator have legiti-
mate children posterior to its date, is to have its effect ?   If it is,
the will of Senac became absolutely void on the 10th of April,
1837, when the child was born, as much so as if it had been express-
ly annulled and revoked by the testator himself.   5 Toullier, No.
313.   In such a case the testator, who has not made a new will,
must be considered as having died intestate.   In support of the
position taken by the counsel for the appellants, we have been
referred to several passages of the valuable treatise of Judge Story
on the Conflict of Laws, establishing generally the doctrines that
a will of personal property, regularly made according to the law
of a testator's domicil, is sufficient to pass such property in every
other country in which it is situated, and that the capacity of the
testator is to be determined by the law of his actual domicil.
These principles are undoubtedly correct, and would be applica-
ble, were this a testament made in France, disposing of moveable
property situated here.   Even then we would have to be govern-
ed, not by the general principles of international law, which on
this subject are not free from doubt and uncertainty, but by our
local laws which have provided for such a case.   The general
rule is laid down in article 483 of the Civil Code, which provides
that " persons who reside out of the State, cannot dispose of the
property they possess here, in a manner different from that pre-
scribed by its laws."   The only exception to this rule is to be
found in the 10th article of the Code, which establishes another
general rule applicable to this case.   It provides that, " the form
and *effect* of public and private written instruments, are governed
by the laws and usages of the places where they are passed and
executed.   But the *effect* of acts passed in one country to be exe-
cuted in another, is regulated by the laws of the country where
they are to have effect.   The exception made in the second para-
graph does not hold, when a citizen of another State of the Union,
or a citizen or subject of a foreign state or country, disposes, by
will or testament, or by any other act *causa mortis*, made out of
this State, of his moveable property situated in this State, if at the
time of making said will or testament, or any other act *mortis
causa*, and at the time of his death, he resides and is domiciliated
out of this State."   It is only under the conditions mentioned in

this article, that our laws recognize and permit the operation of foreign laws on wills disposing of property here. In all other cases the law of this State is to govern. In the present instance the will having been made in Louisiana, and the property of the deceased being situated here, we can see no good reason why our law should be superseded by that of France. Article 1698 may in some measure be considered as a tacit resolutory condition, on the happening of which the will was to become void. Of this the testator must have been aware when he left his will behind him, to be carried into effect under our laws. This provision of our Code is founded on the presumption that he would not have made such a will, had he foreseen that he would thereafter have children. If, as has been remarked, the testator did not revoke this will during the sixteen months that he survived the birth of his child, it is fair to presume that it was because he knew that by the law of Louisiana, under which it was made, it had become a nullity on the birth of such child.

It has further been urged that even if the will be declared void, the bequests of freedom to the slaves Rose and Mathilda are valid, and should be carred into effect; and we have been referred to the Roman Digest, book 28, tit. 4, § 3. It could hardly be expected of us to adopt as a rule to be followed the decision of the Emperor Antoninus in relation to a succession, claimed by the Treasury on account of a will that had become void for the want of instituted heirs. He decided in his liberality that certain slaves emancipated by the will should be set free, notwithstanding its nullity; but this decision was obtained from his munificence, and not on principles of strict law. *Quod nullum est, nullum producit effectum.*

*Judgment affirmed.*