## SUPREME COURT—IN ADMIRALTY.

GEO. HARRIS vs. FRED. WILLIAMS, MASTER SHIP "CINCINNATI."

THE chief mate of a whaleship, having been wrongfully dismissed from service by the master, before the commencement of the voyage, the amount of damages awarded was discretionary and controlled by the circumstances of the case.

ALLEN, C. J.

This is a suit in the admiralty in a cause of damages. It appears that George Harris, the libellant, shipped on or about the 3d of January last past on board the ship "Cincinnati," of which Frederick Williams is master, as chief mate, for a whaling voyage, for the compensation of the 23d lay, and that the said Williams on the next day after the shipment, and before the commencement of the intended voyage, dismissed him from service ; and although said Harris tendered his services again on the next day thereafter, he still refused to recognize him as chief mate, but expressly dismissed him from service on board. The respondent answers that he was justified in dismissing libellant, on the ground of incompetency, and that he is a dishonest and disreputable man, as he verily believes.

It does not appear that the libellant made the contract under any false pretences, and there was full opportunity for the respondent to have ascertained about his qualifications among the seafaring community, for he has been in this service some twenty or thirty years, but he neglected to do this. He makes the contract, and on representations to him about the libellant, takes the responsibility to discharge him, and comes into Court and justifies himself that Harris is not only incompetent but dishonest. I do not deem it essential to give a detailed statement of the evidence. It is admitted that Capt. Coggeshall, from whose ship he was discharged last fall, if present, would say that Harris was an incompetent officer ; and it is also proved that he did say "that Harris had a good name at New Bedford, and was to have $1,000 bonus, but that he could have got as good a man without giving so large a bonus." I regret that this witness is not in Court. Differences arise, occasionally be-

tween master and mate, when both are very good and competent men, and it is always unsafe to take the sweeping declarations of a man to the destruction of another in the business of his life. There is also testimony of a witness who knew him, and another witness who had served with him many years ago, as well as one who had served with him on the ship "Herald," in 1854, who speak of him favorably in this service. The latter witness testifies that Harris, who was the master of the ship "Herald," took eleven or thirteen whales of the twenty-five taken on the voyage. This is not an indication of incompetency, and no reason is assigned why he should not be as efficient to-day as he was at that time. It is not proved that he is in bad health, or of intemperate habits, or that he has been negligent, or disobedient in service ; no especial reason for incompetency is assigned, but he is sought to be placed in ordinary on the general ground of incompetency. Various opinions are entertained of the competency of a chief officer ; there is a decided difference in their efficiency ; some excel in physical strength, others in judgment and experience ; some are in the prime of manhood, and others have passed the meridian of life, but still are very useful men ; their experience and good judgment making up for the depreciation of their manly vigor. The Court cannot declare the libellant incompetent for service from the evidence given. That there are more efficient officers is doubtless true : but because there are, it is no reason to declare him incompetent. It appears that he has been many years master of a vessel : this would not render him incompetent as first officer. His experience ought to give a man skill and ability in command. In all the pursuits of life there is great disparity in the ability of those engaged, still none can be treated as unworthy of hire unless specific cause is shown of deficiency of qualifications for the special service.

General allegations of those who have not served with the individual are not sufficient, especially when disproved by those who have. The testimony of the one is from actual knowledge and personal observation, and the other from rumor, which is too often unfounded. In relation to the charge of dishonesty while in command of the ship "Herald," I am of opinion that it is entirely unsupported by the evidence.

In view, therefore, of this case, which I regard as a wrongful dismissal of a seaman before the commencement of the voyage, what is the proper principle of estimating the damages? In reviewing the maritime codes of the most enlightened nations, I find that in a similar case the rule of the Consolate del Mare and of Racçus is that the wages shall be paid in the same manner as if the mariner had performed the whole voyage ; yet, in a similar case, the ordinances of the Hanse-towns, and of France, give the mariner only one-third part, and the ordinances of Wisby one-half part of his wages, although in cases of dismissal after the voyage is begun, the whole wages are allowed. The settled rule, as the admiralty law is administered in England, is that if a seaman is wrongfully dismissed before the voyage is begun, he is entitled to wages during the time of his service, and to a reasonable compensation for any special damage which he may have sustained. Flanders, in his work on maritime law, lays down this rule : " That if, after the hiring of seamen, the owners of the ship abandon the intended voyage, or if it be broken up for any cause not arising from the fault or misconduct of the crew, they are entitled to receive wages in the nature of damages, the amount being discretionary and controlled by the circumstances of the particular case." (Abbott on Shipping, 749 ; Wolf vs. the brig " Oder," 2 Peter's Adm. Rep., 261 ; Parry vs. the " Peggy," 2 Brown's Adm. App., 533 ; Bray vs. the "Atalanta," Bee's Rep., 48 ; the " Fair American," id. 135.) And I regard the principle equally sound when the seaman is wrongfully dismissed before the voyage is begun. (2 Galls., 58.) There seems to be good sense in this rule of awarding damages. Where a seaman is dismissed on a given day and shipped the same day on equally good wages, and without injurious and unfounded aspersions on his character, the damages certainly would be nominal only. In other cases he may be retained on shore for months before another opportunity to ship offers ; and indeed special damages may be proved. So there is wisdom in the rule of fixing the amount according to the circumstances of the particular case.

In the case of ship " The City of London," (8 English Admiralty Reports, 1 W. Rob., 89,) it appeared that a mariner had shipped on a voyage to New South Wales and the East Indies,

Geo. Harris *v.* Fred. Williams, Master of the Ship Cincinnati.

and back to England, and was discharged by the master before the commencement of the voyage, two days after the shipping articles had been signed.

Lushington, Judge, says : " That the mariner, in being thus deprived of his employment on board his vessel, has sustained a loss for which he is entitled to a remedy. In all cases of this description, some loss will generally accrue to the seaman so discharged.   The amount of that loss, however, must vary according to circumstances, and, in some cases, it is obvious the loss sustained may be very considerable.   For instance, the discharge of the mariner may occur at a season of the year when another engagement cannot be obtained ; the consequence of this must be that the seaman must, for the time, be thrown altogether out of employment.   For this, it is clear, he must have a remedy."

All the cases referred to are applicable to the fixed wages of merchant seamen.   In the lay, or share of whale ships, there can be no basis to decree a settlement of proportion till the voyage has terminated, therefore, as the libellant has thought proper to institute his suit before the voyage has commenced, under any rule of the maritime code in any country, a compensation based upon the value of a contract dependent upon such contingency, is without a precedent and repugnant to the principles which regulate the measure of damages.   The contract for marine service varies in some material respects from those to be executed upon land.   When a man neglects or refuses to fulfill his contract of personal service, he cannot be compelled to perform it by any restraint upon the freedom of his person.   The remedy is for damages for breach of the contract.   The mariner's contract is an exception to this rule. Whenever a seaman fails to render himself on board according to his contract, he can be pursued and arrested wherever he is found, and constrained to complete his engagement ; and punnishments are allowed by the law in some cases to be inflicted for neglect of duty or breach of obligation.   These peculiarities of the marine contract are undoubtedly founded on sound reasons of policy and necessity; but while they are thus regarded by the general law of the sea, there should be a corresponding obligation on the part of the master to regard the

contract scrupulously and not vacate it without a sufficient cause.   The special injury arises from the fact of the discharge and from the inability to find employment in the same service. A master has no legal right to annul a contract at his pleasure, any more than a seaman has, although the remedy in the one case and the other is very different ; while the seaman may be compelled by force to fulfill, the master is only liable in damages.   " The law," says Parsons, " makes no important distinction between the officers, or mates, as they are usually called, and the common sailors."   The former are entitled to the same rights, advantages and security, although their duties and obligations are of a higher order.   The counsel for the libellant contends that the expenses of his return to his home in New London, and the value of his time in returning, should be included in the estimation of damages.   The maritime law makes a striking distinction in a case of wrongful dismissal, between the occurrence, before and after the voyage is begun. Judge Story says, that if a seaman is wrongfully dismissed after the voyage is begun, he is entitled to his wages for the whole voyage ; not so, when the dismissal is made before the voyage is begun.   In the latter case he is entitled to wages during his retainer in the service, and to a reasonable compensation for any special damage, according to the circumstances of the case."

In the case of Emerson *vs.* Howland (1 Mason, 45-43), Judge Story said : " In some of the adjudged cases, indeed, wages up to the successful termination of the voyage have been allowed ; in others, wages up to the return of the seaman to the country where he was originally shipped, without reference to the termination of the voyage.   But these apparent contrarieties are easily reconcilable, when the circumstances of each case are carefully examined.   In all the cases a compensation is intended to be allowed which shall be a complete indemnity for the illegal discharge, and this is ordinarily measured by the loss of time and the expenses incurred by the party.   It is presumed that after his return home, or after the lapse of a reasonable time for that purpose, the seaman may, without loss, engage in the service of other persons ; and where this happens to be the case, wages are allowed only until his return, although the

Geo. Harris *v.* Fred. Williams, Master of the Ship Cincinnati.

voyage may not then have terminated. On the other hand, if the voyage has terminated before his return, or before a reasonable time for that purpose has elapsed, wages are allowed up to the time of his return, for otherwise he would be without any adequate indemnity." (The "Beaver," 3 Rob., 92 ; ship "Exeter," 2 Rob., 261 ; Hoyt *vs.* "Wildfire," 3 Johns., 518 ; Brooks *vs.* Dorr, 2 Mass., 39 ; Ward *vs.* Ames, 9 Johns., 138 ; Sullivan *vs.* Morgan, 11 Johns, 66 ; the "Polly" and "Kitty," 2 Peter's Adm., 420–423, note ; the "Gloucester," 2 Peter's Adm., 403–406, note ; the "Little John," 1 Peter's Adm., 115–119–120.)

Judge Ware, in the case of Hutchinson *vs.* Coombs, 7 Am. Jur., 37, says that, " If a seaman is discharged abroad without justifiable cause, and without his own consent, the measure of damages is the full amount of wages till the return of the vessel, and the expenses of his own return. The intermediate earnings of the seaman may be deducted from the expenses of his return, but not from the wages due."

In the case of Mahoon *vs.* the "Gloucester," 2 Peter's Adm., 403, the doctrine is held " that where seamen were turned off from a privateer without lawful cause, they were held to be entitled to their proportion of the prizes taken during their absence."

If a master of a vessel is wrongfully discharged from his command, he would not be satisfied probably if he was paid for the time spent in making the contract, any more than a merchant would be who had made a contract for a supply of goods for the season, and the vender refused to deliver them, finding that he could make a better sale. The principles of law and of justice require a compensation according to the circumstances of each particular case, and not necessarily limited to the time occupied in making the contract or in its partial fulfillment. The master of a ship has not the frequent opportunities of service as the officers, nor the officers as the seamen, and the ability of the one is far superior to the other, therefore a different rate of compensation for the breach of the contract is very properly made. It does not appear by the evidence that the libellant has been injured by any declarations of the respondent, as distinct from the dismissal from service, although the answer

may be regarded as somewhat inflamed ; but the dismissal itself will cause injury in some degree, for it occurs at a season of the year when there are few opportunities to engage in the whaling service in that capacity.

The material points so ably presented at the bar have been carefully considered, and it only remains for the Court to pronounce the decree, which is, that the sum of one hundred dollars, together with costs of suit, be awarded to the libellant. Decree accordingly.

Mr. Harris, for the libellant.

Mr. Bates, for the libellee.