WHITNEY et al. v. TIBBOL et al.

(Circuit Court of Appeals, Ninth Circuit.   February 6, 1899.)

No. 458.

1. STIPULATIONS—CONSTRUCTION—ADMISSIONS—SHIPPING.
   A stipulation reciting that prior to the departure of a vessel on a voyage
   claimants made advances to her owners, and that upon her return the
   cargo was taken by claimants in payment of the advances, admits that the
   owners of the vessel owned the cargo up to the time when claimants took
   it, and that no freight has been paid therefor.

2. SEAMEN—LIEN FOR WAGES—LIABILITY OF CARGO FOR FREIGHT.
   For their wages, seamen have a lien upon the cargo for the freight, or
   a reasonable charge therefor, though the vessel and cargo belong to the
   same person.

3. SAME—LOSS OF LIEN.
   A lien in favor of seamen on the cargo for the freight is not devested
   by a delivery of the property to one who made advances to the owners of
   the vessel in fitting her out and furnishing her with supplies before she
   set out on the voyage.

Appeal from the Circuit Court of the United States for the Northern
District of California.

Myrick & Deering and A. P. Van Duzer, for appellants.
H. W. Hutton, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge.   The appellees were seamen on a voyage
upon the barkentine Marion from San Francisco to Alaska.   On
their return to San Francisco they libeled the bark for their wages,
and she was sold.   Her proceeds were insufficient to pay the wages,
and the appellees libeled and caused to be seized her cargo, consist-
ing of 850 barrels of salmon in a warehouse in San Francisco, claim-
ing that they had a lien thereon to the extent of the freight.   The
substance of the allegations of the libel was that the owners of the
bark were the owners of the salmon, and that the latter owed freight
money to the vessel, which had not been paid, in the sum of $1,750.
The appellants, C. E. Whitney & Co., answered, denying that the
owners of the vessel ever owned the salmon, and denying that any
freight money was due, and alleging that all freight had been paid.
The district court decreed that the owners of the vessel owned the
salmon, and that the seamen had a lien upon the latter for the freight,
which was fixed at the sum of $850, or at the rate of $1 per barrel.
Upon the appeal it is contended that the district court erred in rul-
ing—First, that freight was due to the ship from the owners of the
salmon; second, that the owners of the vessel were the owners of the
cargo; and, third, that the seamen had a lien upon the salmon, and
could seize the same in the possession of the appellants after the ter-
mination of the voyage.

The only proof that freight had been earned, and that the freight
money had not been paid, is furnished in a stipulation of the parties

to the effect that, prior to the departure of the bark on the voyage in question, the appellants advanced to the owners of the vessel money and merchandise, in fitting her out and furnishing her supplies, in the sum of $4,400; that, upon the return of the vessel, the cargo was taken therefrom and placed upon a wharf; and that the appellants took it from the wharf, and put it in a warehouse, and claimed it in payment of their advances. It follows, from this stipulation, that the owners of the vessel owned the cargo up to the time when it was delivered to the appellants. This is necessarily implied in the admission that the latter took it in payment of advances. It also is implied in the stipulation that no freight had been paid for the cargo. To whom and how could freight have been paid, when it is conceded that the whole of the cargo was turned over to the appellants in payment of what was due them? The owners of the cargo up to the time of its delivery to the appellants were also the owners of the vessel. The appellants could not have paid the freight. Under the admitted facts it was impossible that they should have done so. They had made advances to the vessel to a greater amount than the value of the cargo, and they received the cargo in part payment. The owners could not have paid the freight, for to have done so would have been to pay themselves. It is the legitimate and fair inference from the admitted facts that the freight was not paid, and if, to the knowledge of the appellants, it had in any way been paid, they should have shown the facts and the circumstances of the payment. It was admitted that the sum of $1 was reasonable freight.

Did the seamen have a lien upon the cargo for the freight? and, if so, was the lien lost by the delivery of the cargo to the appellants? The general proposition is not disputed that seamen have a lien for their wages upon both the ship and the freight. Rule 13 of the general admiralty rules provides:

"In all suits for mariners' wages the libelant may proceed against the ship, freight, and master, or against the ship and freight, or against the owner and master alone in personam."

In the leading case of Poland v. The Spartan, 1 Ware, 134, Fed. Cas. No. 11,246, it was held that, when the cargo is owned either by the owner or the charterer of a vessel, the seamen may proceed against the cargo to recover the reasonable value of the freight money, and apply the same in satisfaction of their lien for wages. That decision has been followed in Skolfield v. Potter, 2 Ware, 394, Fed. Cas. No. 12,925; The Clayton, 5 Biss. 162, Fed. Cas. No. 2,870; The Antelope, 1 Low. 131, Fed. Cas. No. 484; and In re Low, 2 Low. 264, Fed. Cas. No. 8,558.

It is suggested that the doctrine of Poland v. The Spartan is discredited by the decision in Sheppard v. Taylor, 5 Pet. 675. In that case, it is true, the owners of the ship were also the owners of the cargo. There were in the admiralty three distinct funds, representing the proceeds of the vessel, the cargo, and the freight. The court said:

"We think there is no claim whatsoever upon the proceeds of the cargo, as that is not in any manner hypothecated or subjected to the claim for wages."

That language was used, however, in view of the fact that the freight had been segregated from the cargo, and was represented by a distinct and separate fund. Under the circumstances, of course, there could be no lien upon the cargo. But elsewhere in the opinion in that case the court said:

"Freight, being the earnings of the ship in the course of the voyage, is the natural fund out of which the wages are contemplated to be paid."

The decision in Poland v. The Spartan is clearly in harmony with the general principles of the admiralty law, which highly favors the seaman's claim for wages, and jealously protects his lien therefor. No valid reason is perceived for denying the lien in cases where the vessel and the cargo belong to the same owner. The fact that no freight is charged or paid in such a case opposes no obstacle to the enforcement of the lien. It imposes upon the court only the added duty of determining what, under the circumstances, would be a reasonable charge for freight. In such a case, no less than in the case where the vessel and the cargo belong to separate owners, the master and the crew have contributed to the result of the voyage,—the transportation of the cargo. They ought to have recourse to the usual funds for the payment of their wages, and the first of these is the freight. If, then, the cargo is subject to such a lien, the delivery of the possession of the cargo to the appellants did not devest it. The lien followed the cargo, wherever it might be found. Brown v. Lull, 2 Sumn. 443, Fed. Cas. No. 2,018; The Rock Island Bridge, '6 Wall. 213; Sheppard v. Taylor, 5 Pet. 707, 710; The Nestor, 1 Sumn. 73, Fed. Cas. No. 10,126; The Bolivar, Olcott, 474, Fed. Cas. No. 1,609.

In Vandewater v. Mills, 19 How. 82, it was said of a maritime lien:

"It is a jus in re, without actual possession or any right of possession. It accompanies the property into the hands of a bona fide purchaser. It can be executed and devested only by a proceeding in rem."

The decree will be affirmed.