### EVERETT et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Ninth Circuit. October 30, 1922.)

No. 3811.

1. Seamen ⬅️22—One who obtains exclusive possession and control of ship from general owner becomes liable for wages and other expenses.

Where the general owner places the ship in the exclusive possession and control of another, such other becomes the owner pro hac vice with respect to liability for wages and other expenses, and recovery therefor cannot be had against general owner.

2. Seamen ⬅️22—General owner liable for wages only when in privity with master.

The general owner is liable for seamen's wages only, when privity with the master is shown.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Seamen ⊕⇒22—Effect of transfer of ownership of vessel on owner's liability for wages.**

An owner may not escape liability for wages by transfer of ownership pending fulfillment of articles, nor during a voyage, nor by abandoning the ship to underwriters.

**4. Seamen ⊕⇒22—Owner, who makes bona fide sale of and delivers possession of ship, not liable for wages of seamen employed by master hired by purchaser.**

Owner, who makes a bona fide sale of ship, and delivers possession and surrenders control to purchaser, is not liable for wages of seamen employed by master, hired by purchaser, earned during navigation of vessel by such master and seamen, though the sale was not consummated by execution of formal transfer, and the ship is still documented in the name of such owner, where seamen were not misled thereby; the purchaser being, for the purposes of the voyage, the owner pro hac vice.

**5. Judgment ⊕⇒812(2)—Decree in rem for wages does not defeat right to recover deficiency in personam.**

A decree in rem for seamen's wages *held* not to defeat the right to recover the deficiency from the master, obligated under the shipping articles, in the form provided by Rev. St. § 4612 (Comp. St. § 8392), to pay such wages in an action in personam.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit by W. Everett and others against the United States, the United States Shipping Board Emergency Fleet Corporation, and another. Decree of dismissal as to named defendants (277 Fed. 256), and plaintiffs appeal. Affirmed.

James Kiefer, of Seattle, Wash., for appellants.

Thos. P. Revelle, U. S. Atty., and John A. Frater, Asst. U. S. Atty., both of Seattle, Wash., and MacCormac Snow, of Portland, Or., for appellees.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

PER CURIAM. The hull of the Agron was built for the United States, represented by the Shipping Board Emergency Fleet Corporation. In March, 1920, the United States Shipping Board Emergency Fleet Corporation, representing the United States, and the National Oil Company, a New Jersey corporation, agreed in writing that the Fleet Corporation would sell to the National Oil Company, named as "the buyer," certain incomplete hulls, including the Agron, with material for the completion. The agreement provided that the Fleet Corporation was to deliver to the custody of the buyer the hull and materials. The buyer was to accept delivery, together with the bill of material; the hull and material to be delivered "unto the custody of the buyer for the sole purpose of completion thereof by the buyer," the buyer at its own expense to complete the same at the earliest possible date consistent with good workmanship. The title to the hulls and bills of material and any additions made thereto were to remain in the Fleet Corporation until the same "shall be completed and documented, and the buyer shall have executed the mortgage and notes hereinafter pro-

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vided for." From the time of delivery of the hull the buyer was to keep the hull and material free from liens, and to keep the same insured, policies, payable to the Fleet Corporation and the buyer, as their interests might appear, policies to be delivered to the Fleet Corporation. The buyer was to pay the purchase price of the hull and machinery to the Shipping Board in current funds in manner agreed upon. "Upon completion and documentation" of the hull the buyer agreed to execute and deliver to the Board a first mortgage on the vessel in the Board's standard form, the mortgage to secure the payment of the actual amount determined to be due the Fleet Corporation.

It is stipulated that the contract never was recorded in any public office, and that the Agron was completed and outfitted and her machinery installed by the National Oil Company, operating through its representative, or Contractors' National Shipbuilding Company and J. H. Price Shipbuilding Company. No mortgage was ever given to the United States, as provided in the contract. The ship was documented on June 7, 1920. In the certificate of registry H. R. Bowen, executive assistant, Division of Supply and Sales, represented the United States Shipping Board, and named Tory Hedemark as master.

In June, 1921, at Seattle, shipping articles were signed for a voyage to Australia and return. In January, 1921, at Balboa, in an admiralty proceeding, the ship was libeled for salvage. The libelants, appellants herein, intervened for their wages, and after decree by the United States Court for the Canal Zone, the ship was sold and the proceeds distributed. Libelants returned to Seattle, and brought this suit for balances of wages and expenses due them, after deducting the amounts paid them under the decree in their favor made by the court for the Canal Zone. The District Court held that they were entitled to recover from the master, but dismissed the libels as to these appellees.

[1] We have carefully considered the summarized contentions of counsel for appellants that the fact of documenting the ship in the name of the United States was not in accordance with the terms of the sale contract, and that the court should presume conclusively that the contract was abandoned, and also that for lack of evidence of a charter of any character, or even of an operating contract, the case is not withdrawn from the ordinary situation where the general owner of a ship is assumed to operate her, and should be held for all engagements and omissions. It is our opinion that under the authorities cited by the court below, and others which we have examined, the case falls within the rule that where the general owner places the ship in the exclusive possession and control of another, such other becomes the owner pro hac vice with respect to liability for wages and other expenses. And it clearly appearing that the Agron was, for the voyage to which this controversy pertains, in the possession of the National Oil Transport Company as owner pro hac vice, the appellees are not liable on the ship's articles. Leary v. United States, 14 Wall. 607, 20 L. Ed. 756; Aspinwall v. Bartlet, 8 Mass. 483; Hussey v. Allen, 6 Mass. 163; The General McPherson (D. C.) 100 Fed. 863; The L. L. Lamb (D. C.) 31 Fed. 32. We therefore adopt so much of the opinion of the trial court as is directly pertinent:

[2] "The general owner is liable for seamen's wages only when privity with the master·is shown. Hussey v. Allen, 6 Mass. 163. This principle is applied by Judge Hanford in The General McPherson (D. C.) 100 Fed. 860, where at page 865 he says: 'I consider that the legal authority of Capt. Nelson to bind the ship by his contract ceased when he unlawfully and tyrannically took control of her adversely to her owners.' In this case the master was engaged by the owner, and afterwards he appropriated the cargo and ship, and before the master secured the vessel he employed one Poole as cook, and did not pay him, and Poole sought to impress his claim for wages against the ship.

[3, 4] "An owner may not escape liability for wages by transfer of ownership pending fulfillment of articles, Bronde v. Haven, 4 Fed. Cas. 211; nor during a voyage, Sheppard v. Taylor, 5 Pet. 707, 8 L. Ed. 269 [9 U. S. 531]; nor by abandoning the ship to underwriters, Brooks v. Door, 2 Mass. 39; but where the owner makes a bona fide sale, and delivers possession of the ship and surrenders control to the purchaser, he is not liable for the wages of the seamen employed by the master, who were hired by the purchaser, the vessel being navigated by such master and seamen, and voyage directed by the purchaser or his crew, U. S. v. Shea, 152 U. S. 178, 14 Sup. Ct. 519, 38 L. Ed. 403; The Craigallion (D. C.) 20 Fed. 747; The T. A. Goddard (D. C.) 12 Fed. 174. And the fact that the sale was not consummated by execution of formal transfer, and the ship still documented in the name of such owner, would not change the status. Aspinwall v. Bartlet, 8 Mass. 483; The McPherson, supra. Failure to take a mortgage was the hazard of the respondents, which cannot affect the seamen. The contract of sale provided for a mortgage to secure the purchase price; the title was retained in the respondent conditioned upon payment. The security was not affected; only the terms of payment and the character of the lien. The registry may be shown by parol to be conditional rather than absolute ownership, where third parties are not misled. Morgan's Assignees v. Shinn, 82 U. S. (15 Wall.) 105, at page 110 (21 L. Ed. 87) where Justice Strong said: 'It is unquestioned that an instrument absolute in its terms may be shown by parol evidence to be only a mortgage. It is true that if trust and confidence have been reposed in it by third parties, with the honest belief that it was indefeasible, and such parties have been misled by its form, they have a right to insist that, as to them, it shall be what upon its face it purports to be.'

"While this was not an expression having relation to admiralty, the same rule has application. In Thorp v. Hammond, 79 U. S. (12 Wall.) 408, 20 L. Ed. 419, one of several general owners sailed a vessel on shares under an agreement whereby he became a charterer, hiring his own crew, paying and victualing them, paying half the port charges, retaining half the net freight after the port charges were taken out, and paying the other half to the general owners, was held to be owner pro hac vice, and is said to be personally liable for tortious collision with another vessel, and the other·general owners were not liable. At page 416 of 74 U. S. (20 L. Ed. 419), the court said: 'It is clear, therefore, that he must be considered as having been the owner pro hac vice. This accords with the authorities generally. Notwithstanding this, however, and though Hammond was the special owner, it has been contended on behalf of the libelants that all the general owners are liable for the torts committed by the schooner while she was thus let to charter. The Circuit Court was of opinion that they are not, and this court is equally divided upon the question. But we are all of opinion that the owner pro hac vice is liable, and that he may be charged in this proceeding.'

"Justice Clifford, in Reed v. United States, 78 U. S. (11 Wall.) 591, at page 600 (20 L. Ed. 220), in construing a contract of affreightment said: 'Charterers or freighters may become the owners for the voyage without any sale or purchase of the ship, as in cases where they hire the ship and have by the terms of the contract, and assume in fact, the exclusive possession, command, and navigation of the vessel for the stipulated voyage.'

"Justice Field, in Leary v. United States, 81 U. S. (14 Wall.) 607, at page 610 (20 L. Ed. 756), said:

" 'If the charter party let the entire vessel to the charterer with a transfer to him of its command and possession and consequent control over its

navigation, he will generally be considered as owner for the voyage or service stipulated.'

"And the general owner in neither case would be liable. The principle stated in these cases has application here, where the purchaser assumed exclusive possession, command and navigation. Justice Story, in Marcardier v. Chesapeake Ins. Co., 8 Cranch, 39, at page 49 (3 L. Ed. 481) said: * * * A person may be owner for the voyage who, by a contract with the general owner, hires the ship for the voyage, and has the exclusive possession, command and navigation of the ship. * * *' In which case the owner is absolved from responsibility. The statement in the libelants' brief that the National Oil Company 'was a tort-feasor in operating, if it did operate, the Agron,' cannot operate to the libelant's advantage. A tort committed against the respondent cannot create a right for the seamen. In any case, to bind the owner there must be privity between him and the master. If the master is employed by another who has possession of the ship, and as tort-feasor operated it without the owner's consent there would be no privity and no responsibility could attach.

"The seamen in the instant case was not misled. They made no inquiry. The seamen, while testifying to an impression that the ship is of a style built by the Shipping Board, knew nothing about the ownership or registry certificate, and made no inquiry, and no representations of any fact or inducement of any kind as to ownership by the United States was made. The ship was staunch, the motive power adequate, and the seamen had a lien for their wages. And in view of all the circumstances there was no occasion to make inquiry as to the financial responsibility of the owner. Hedemark, the master, employed by the National Oil Company through its representative, the National Oil Transport Company (and he testified he continued in that relation), made no representation to the seamen or claim upon the respondent until he was unable to secure funds from his employer and after the vessel was libeled.

"It is contended that by analogy The Dubuque, 7 Fed. Cas. 1141, the registered owner should be held as owner for the voyage. The status of a master of a ship and of the owner do not bear the same relation. It is claimed that the Panama Canal Zone court was without jurisdiction and that the sale of the vessel is void, that the master by timely appearance suggested to the court on behalf of the respondents an exemption from attachment under Act March 6, 1920, and that if the court had jurisdiction the contract of the libelants was merged in the decree. The first suggestion is immaterial here, and the second is material only in so far as the master is concerned.

[5] "The decree in rem does not of itself defeat a contractual right to seek a remedy in personam for the balance of an unliquidated claim, if the two remedies exist and the remedy in rem has been exhausted. Toby v. Brown, 11 Ark. 308; Carey v. The Kitty, 5 Fed. Cas. 59; The Cerro Gordo (D. C.) 54 Fed. 391; Whitney v. Tibbol, 93 Fed. 686, 35 C. C. A. 544. Under the shipping articles the master is obligated to pay the wages of the seamen. This is an extreme hardship, brought on by no fault of the master. It is a liability which was not contemplated by either the master or the seamen. * * * The form of article is provided by section 4612, R. S. Schedule, Table A (Comp. St. § 8392). This form was adopted when the relation of the master to the ship and to the owner was very different from that of the present time. The reasons for this stipulation, it would seem, do not obtain in the modern shipping world, and a change should be made, but it cannot be made by the court.

"A judgment must be entered against the master for the unpaid wages and return transportation to Seattle for the officers and men, who returned immediately, as provided in the shipping articles. * * * The libel dismissed as to the United States and its agencies."

Affirmed.