[Civ. No. 5497.   Fourth Dist.   June 17, 1958.]

CLARENCE H. ZIRKER et al., Appellants, v. JOSEPH BABER, JR., et al., Defendants; JAMES L. DALLAS, Respondent.

Hillyer & Crake and Oscar F. Irwin for Appellants.

Luce, Forward, Kunzel & Scripps for Respondent.

MUSSELL, J.—This is an appeal by plaintiffs from a judgment in favor of defendant James Dallas in an action on a common count for money had and received.

In July, 1954, defendant James L. Dallas owned a 70 per cent interest in the Waldman Motor Company, a partnership in La Jolla, and the remaining interest therein was owned by H. Stephen King. The La Jolla Garage, Inc., was formed by an amendment of the articles of incorporation of the Community Broadcasting Company in order to take over the assets and business of the Waldman Motor Company. Application was made to the Division of Corporations of the State of California for a permit to issue securities for the assets of the Waldman Motor Company. A permit was issued by the Corporations Commissioner conditioned on the issuance of shares of stock only to the extent of the net worth of the assets transferred to the La Jolla Garage Corporation.

On November 30, 1954, the La Jolla Garage Corporation issued 1,400 shares of its class A stock, par value $10 per share, to Dallas for his 70 per cent interest in the Waldman Motor Company partnership and 600 shares were issued to H. Stephen King for his 30 per cent interest therein. However, this stock was issued prior to a determination of the net worth of the assets transferred and an accountant was subsequently employed to determine the net worth as of November 30, 1954, the date of the transfer. The balance sheet showed that the net worth of the assets was $4.87 per share instead of $10 per share as required by the permit. Shortly after receiving the accountant's statement, the secretary of the corporation, who was also its attorney, advised King, Dallas and Joseph Baber that the net worth as shown on the balance sheet was too low for the amount of stock that had been issued and that something had to be done about it, that "it was one of two things, either the statement that was prepared was incorrect and had to be corrected, or else the stock that was outstanding would have to be transferred back and a lesser number of shares in the same percentage would have to be issued." The 1,400 shares issued to Dallas were never deliv-

ered to him because of conditions imposed by the Corporations Commissioner.

Defendant Joseph Baber, who was an employee of the La Jolla Garage, entered into an agreement in writing with Dallas on January 14, 1955, in which Dallas agreed to sell and Baber agreed to buy 50 per cent of the net worth of the La Jolla Garage Corporation for the sum of $10,000 and Dallas agreed to execute any and all necessary documents necessary to transfer said interest to Baber. Baber obtained the sum of $10,000 from the plaintiffs Clarence H. Zirker and Agnes Jean Zirker and Baber paid said sum to Howard Clayton, the attorney and secretary of the corporation. The money was placed in the trustee account of the law firm of Luce, Forward, Kunzel and Scripps. On January 27, 1955, Clayton paid said sum to Dallas upon obtaining a written authorization so to do from Baber.

On March 15, 1955, Dallas and Baber petitioned the Corporations Commissioner for permission to issue 1,000 shares of corporate stock to Baber, and pursuant to an order of the commissioner, 1,000 shares were transferred in 'escrow to Baber. Joseph Baber was president of the defendant La Jolla Garage Corporation at all times after February 15, 1955, and James L. Dallas resigned and severed all connection with that company effective February 15, 1955.

The original complaint in the instant action for money had and received, rescission of contract, breach of contract and conversion named Joseph Baber, Jr., Joan Baber, La Jolla Garage, a California corporation, and John Does One to Five as defendants. The cause came on regularly for trial on February 1, 1956. The La Jolla Garage defaulted and the matter was partially heard by the court. By consent of counsel, a continuance was had to June 26, 1956, for further proceedings. On that date counsel for the Babers informed the court that they would not appear for further proceedings and desired to default in said matter. On motion, judgment was then entered against the Babers and the La Jolla Garage for $16,094.08, and costs, on the ground that the defendants Baber obtained moneys from plaintiffs by false pretenses and false representations. There was no appeal from this judgment and it has become final.

Subsequent to February 15 and prior to June 26, 1956, the Babers filed a cross-complaint against Dallas and Dallas was served with summons in the original action as John Doe One.

He appeared by answer to the complaint and cross-complaint. On June 26th he appeared at the trial and, upon being advised that the Babers would not prosecute their cross-complaint against Dallas, the court granted judgment for Dallas on the cross-complaint and commenced further trial of the proceedings on the complaint of plaintiffs versus Dallas by which the plaintiffs sought to recover the sum of $10,000 from Dallas on the basis of a common count for money had and received. Plaintiffs contended that Dallas had received said sum under circumstances which made it his duty to surrender the money to the rightful owners, the plaintiffs in the action.

The trial court found that Dallas was not indebted to plaintiffs in the sum of $10,000 or any other sum; that plaintiffs did not lend Dallas said sum or enter into any agreement to lend him said sum for the purchase of stock in the La Jolla Garage Corporation; that Dallas made no false or fraudulent representations to plaintiffs or to the Babers in connection with the certificates of stock of said corporation or the business connected therewith; that plaintiffs did not enter into any agreement nor were they induced to enter into any agreement regarding the purchase of stock in said corporation by any acts or conduct on the part of Dallas; that Dallas does not hold stock certificates of said corporation or assets of said corporation that belong to the plaintiffs. Judgment was entered that plaintiffs take nothing against defendant James L. Dallas and plaintiffs appeal from the judgment.

■ Appellants base their claim to recovery from Dallas on a common count on the assumption that the money they advanced to Baber was still owned by them when it was paid to and received by Dallas. However, there is substantial evidence that the money was advanced to Baber for his own use and loaned to him by the plaintiffs. Dallas was not a party to the agreement between Baber and the plaintiffs and did not know Baber had obtained the money involved from them. The agreement between Baber and the plaintiffs was not introduced in evidence in the instant case and the record clearly shows that the $10,000 involved was paid to Dallas pursuant to his agreement with Baber and not with the plaintiffs. Under the terms of this agreement it appears that if Dallas failed or refused to execute all necessary documents to transfer the 50 per cent of the net worth of the La Jolla Garage to Baber, he, Baber, would then have a right of action against Dallas for a breach of said agreement. However, the Babers abandoned their cross-complaint against Dallas in the instant action

and it was dismissed by the trial court on motion of Dallas. There was no fraud alleged or proved in the instant action on the common count against Dallas and it does not appear that he obtained any money from the plaintiffs. His obligation was to the Babers and not to plaintiffs.

The record shows that plaintiffs recovered a partial judgment against the Babers and the La Jolla Garage in the instant action on the ground that the Babers, as agents for the La Jolla Garage Corporation, obtained the $10,000 involved by falsely and fraudulently representing that the La Jolla Garage had been making a profit and was a good business venture. As noted, this judgment has become final.

Appellants devote the major portion of their briefs to the question of whether the stock transferred to Baber was void. However, that was an issue between the Babers and Dallas and Dallas did not agree to deliver any stock to plaintiffs. The evidence supports the implied finding that there was no privity of contract between Dallas and the plaintiffs. The evidence further supports the implied finding that there was no trust relationship between plaintiffs and Dallas.

There is substantial evidence in the record before us to support the findings of the trial court and the judgment entered in conformance therewith.

Judgment affirmed.

Griffin, Acting P. J., and McCabe, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.