[Civ. No. 6157. Fourth Dist. July 1, 1960.]

DAVID KELLER, Appellant, v. H. STEPHEN KING et al., Respondents.

Enright, Von Kalinowski & Levitt and Gordon E. Von Kalinowski for Appellant.

White, Froehlich & Peterson, J. Wesley Fry and Luce, Forward, Hamilton & Scripps for Respondents.

SHEA, J. pro tem.*—This appeal concerns one case of several related cases that arose out of the financial failure of the business known as the La Jolla Garage. Four of the cases were consolidated for trial, but this is the only case being appealed.

In his amended complaint plaintiff and appellant sought

*Assigned by Chairman of Judicial Council.

recovery on a count of rescission for fraud; rescission for breach of contract; damages for money advanced and on the common count. Simply stated, he seeks to recover money paid by him for stock in the La Jolla Garage, which stock he alleges to be void.

It appears that in 1954, defendants Dallas and King owned an automobile sales and service business known as Waldman Motors Company. This was a copartnership, Dallas owning 70 per cent and King 30 per cent. They incorporated the business, and it was thereafter known as La Jolla Garage. On September 30, 1954, they held a directors' meeting to consider the matter of making an application for the issuance of shares of stock. At this meeting they discussed the value of the partnership assets which were to be transferred to the corporation in exchange for stock.

During the time they had been operating as a partnership they were required, under their dealer's franchise, to make monthly financial reports showing the current financial condition of the agency. Prior to September 30, 1954, these reports were prepared without audit by Mr. Peterson, a certified public accountant. At the time of the directors' meeting on September 30, they had available for inspection these monthly financial statements. The material statements which they considered at the meeting, and which were introduced in evidence, showed the net worth of the partnership as follows:

| | |
|---|---|
| July 31, 1954 ................ | $17,930.39 |
| August 31, 1954 ............. | 28,974.86 |
| September 30, 1954 .......... | 27,771.00. |

At the meeting on September 30, the directors, Mr. Dallas, Mr. King and a Mr. Clayton, secretary of the corporation and its attorney, were present. The testimony discloses they discussed the value of the partnership assets as shown by the aforementioned financial statements. Mr. Clayton advised the board that the value of the assets to be transferred to the corporation could not be less than the par value of the stock to be issued. After considering the matter, they concluded that the value of the partnership assets would not be less than $20,000. They then passed two resolutions, one fixing the fair market value of the partnership interest of Dallas at $14,000, the other fixing the fair market value of the partnership interest of King at $6,000. After the meeting, Mr. Clayton prepared an application for a permit to issue stock, including in such application the aforementioned resolutions of value.

The application was for the issuance of shares in the corporation to Dallas and King in exchange for their respective interests in the partnership.

The permit was granted as applied for, authorizing the issuance of 2,000 shares at a par value of $10 per share. The permit contained the following provision: "provided that the net worth of the assets transferred to the applicant shall not be less than the par value of the shares issued as consideration therefor." The permit also required that the stock be held in escrow.

The permit was issued on October 29, and was received in the mail by Mr. Clayton sometime after November 1. On December 1, 1954, Dallas and King assigned their partnership interests to the corporation and stock certificates were signed and issued to Dallas for 1400 shares and to King for 600 shares. After that date, the business was operated as a corporation. The closing date of the partnership business was November 30, 1954.

The partners then instructed Mr. Peterson to prepare a final financial statement of the partnership business. This statement was prepared by Mr. Peterson and delivered to the partners in the latter part of January or early part of February, 1955. This statement showed the net worth of the partnership assets as of November 30, 1954, to be the sum of $9,754.36. It is this financial statement upon which appellant relies to establish the fact that the value of the partnership assets transferred to the corporation was not equal to the par value of the shares issued in exchange therefor, as required by the permit.

Mr. Peterson, the accountant, testified that he prepared the final partnership statement in such a manner as to be most advantageous to the partnership for income tax purposes; that between the time the partnership business was terminated and the time he prepared the financial statement, he had several conversations with Dallas and King concerning the operation of the business and the valuation of inventories; that under the prevailing revenue laws he could properly make certain adjustments and that he did make adjusting entries for the purpose of reducing the partners' income tax. He testified that the adjusting entries made for tax reducing purposes totaled approximately $10,000.

The financial statement of the partnership for October 31, 1954, was also received in evidence, showing the net worth as of that date to be approximately $23,000.

One Joseph Baber was named as a defendant in this case, but was not served with a summons until more than three years after the filing of the action. At the trial the court granted a motion for dismissal as to him.

Baber had been a salesman for La Jolla Garage. In the early part of 1955, he made agreements with Dallas and King to purchase their shares in the corporation. Pursuant to these agreements, he obtained 1,000 shares of stock belonging to Dallas with money that he had obtained from a Mr. and Mrs. Zirker. This transaction was the subject of a prior decision of this court. (*Zirker* v. *Baber*, 161 Cal.App.2d 355 [327 P.2d 63].) This 1,000 shares was taken in Baber's name, and on February 15, 1955, a meeting of the board of directors was held, at which time Dallas resigned from the board of directors and Baber was substituted in his place. Baber was also elected president. After this meeting Baber became the active manager of the business.

During this period of time, Mr. Keller, appellant herein, became interested in the business and purchased 1,000 shares of the corporate stock. Over a period of several months and by several checks, Keller paid to Baber or to the La Jolla Garage a total of $19,930. Of this sum $5,000 was paid by Baber to Dallas for the remaining 400 shares which he owned, and $6,000 was paid into an escrow for the purchase of the 600 shares owned by King. Keller then became a director and vice president of the corporation.

In the ensuing months the business became increasingly unprofitable. In about July, 1955, Keller took over the active management of the business. The business failed, and in September, 1955, the corporation made an assignment for the benefit of creditors.

There are many other factual details contained in the briefs. However, they are not relevant to this appeal and it will serve no purpose to recite them herein.

Bearing in mind that the action has been dismissed as to Baber, appellant is seeking to recover from respondents Dallas and King that money which he paid to Baber and which Baber, in turn, paid for the purchase of the stock held by Dallas and King.

The material portion of section 26100 of the Corporations Code reads as follows: ''Every security of its own issue sold or issued by a company with the authorization of the commissioner but which has been sold or issued in nonconformity with

any provision in the permit authorizing the issuance or sale of the security is void.''

Appellant contends that the court should have found that the stock issued by La Jolla Garage was void. He asserts that the financial statement of November 30, 1954, proves that the net worth of the assets of the partnership transferred to the corporation was less than the par value of the shares that were issued in exchange therefor; that since this was not in conformity with the requirements of the permit, the original issue of shares is void. He apparently reasons from this that he is entitled to get back the money he paid to Baber for the shares.

Although there appear to be several reasons why appellant could not recover from these respondents, since this is the only point raised on this appeal, it is the only one that will be considered by this court.

The trial court ruled that the burden of proof was on plaintiff to establish that the assets were not worth the amount fixed by the board of directors and that plaintiff had not met his burden of proof.

As was pointed out by the trial judge in his memorandum decision, there was no direct evidence of the actual value of the assets that were transferred by the partnership to the corporation. The only evidence which purported to prove this value was the monthly financial statements. The statements prior to November, 1954, showed the value in excess of $20,000. The only statement that showed a value less than $20,000 is the statement of November 30, 1954. The testimony of Mr. Peterson clearly showed that the figures used in these statements could be ''adjusted'' to suit the immediate purpose of the parties concerned. His uncontradicted testimony was that in the November 30 statement the values were adjusted downward for the purpose of accomplishing an income tax savings. At most, the statement of November 30, 1954, was only one item of evidence on the issue of value. In no way could it be said to be conclusive evidence on that issue. It did no more than raise a conflict in the evidence. It is elementary that where the evidence is conflicting, the finding of the trial court will not be changed on appeal.

Since the evidence is sufficient to support the judgment, the judgment is affirmed.

Shepard, Acting P. J., and Coughlin, J., concurred.