**N. H. SHIPPING CORP.,** as owner of **THE S/S JACKIE HAUSE,** Libelant,

v.

**FREIGHTS OF THE S/S JACKIE HAUSE,** Respondent.

Stratford Factors, Claimant.

**STRATFORD FACTORS,** Libelant,

v.

**FREIGHTS OF THE S/S JACKIE HAUSE,** Respondent.

United States District Court
S. D. New York.

Feb. 19, 1960.

Nelson, Healy, Baillie & Burke, New York City, for N. H. Shipping Corp. (Nicholas J. Healy, III, and Joseph P. Flemming, New York City, of counsel).

Zock, Petrie, Sheneman & Reid, New York City, for Stratford Factors (John R. Sheneman, New York City, of counsel).

RYAN, Chief Judge.

These consolidated suits filed in the Admiralty come to us for trial with no substantial factual issue presented.

We have to determine the ownership of uncollected freights admittedly due on a transocean cargo shipment of corn in bulk from a United States Gulf port to Montevideo, Uruguay. Adverse claims are here asserted by N.H. Shipping Corp., the owner of the S/S "Jackie Hause" on which the cargo was carried, and Stratford Factors, the assignee of Pegor Steamship Corporation, the New York charterer of the vessel. The claims and the subject matter of the suits are within the admiralty jurisdiction of the Court.

These facts are undisputed:

World Tramping Agencies, Inc., "as Agents for Owners and/or chartered owners of the American Steamship 'Pacific Wave' or Owner's option Substitute similar type U. S. Flag Vessel", entered on August 6, 1959, into a voyage charter with Ministerio de Ganaderia Agricultura (Servicio Oficial de Distribucion de Semillas) Uruguay, as Charterers, for the carriage of a full cargo of corn in bulk from one or two safe United States ports in the Gulf of Mexico to Montevideo. The charter provided, in part, that

"Full freight shall be deemed earned on cargo as soon as loaded on board vessel, vessel and/or cargo subsequently lost or not lost.

"Ninety percent (90%) of the freight to be paid promptly in New York * * * upon surrender of shipping and other documents required to the Banking Institution (as advised by Charterers) holding applicable letter of credit, for freight money. Balance of freight and adjustment of despatch, demurrage, dead freight, extra freight, etc., shall be paid promptly upon receipt by the Charterers from the Owner of laytime statements in triplicate signed by the Receivers

of the cargo, ship's Agent and Master.

\* \* \* \* \* \*

"Captain to call at Charterers' or their Agents' Office, as requested, and sign Bills of Lading, as presented, without prejudice to this Charter Party.

\* \* \* \* \* \*

"It is also mutually agreed that this contract \* \* \* shall be superseded by the signing of Bills of Lading in the form customary for such voyages for grain cargoes, which Bills of Lading shall however contain the following clauses.

\* \* \* \* \* \*

"6. 'Vessel to have a lien on the cargo for all freight, dead freight, demurrage or average.'

"Charterers' liability under this Charter to cease on cargo being shipped."

The "Pacific Wave" was owned by Pegor Steamship Corporation, an affiliate of World Tramping Agencies, Inc.

The S.S. "Jackie Hause" was nominated instead of the "Pacific Wave" to perform the charter of August 6, 1959. The S.S. "Jackie Hause" had, in turn, been chartered from N.H. Shipping Corporation by World Chartering & Brokerage, Inc., an affiliate of World Tramping Agencies, Inc., under terms expressed in a letter addressed by Windhook, Incorporated, as chartering brokers, to Marinus, Inc., as agents for N.H. Shipping Corporation, dated September 3, 1959, reading:

"Dear Sirs:

"Amer. S/S 'Jackie Hause'
"C/P dated Sept. 3, 1959

"Upon your authority, we confirm fixing the above ship on the following terms and conditions:

Standard American-built liberty
9500 metric tons, 5% more or or less at Owners' option
Corn in bulk

Loading ½ safe port U.S. Gulf
Discharging ½ safe berths Montevideo
Sept. 10/25, 1959
BFC load/500 free discharge
$15.25 if one loadport, $15.50 if two loadports
$1500 demurrage
$750 fidpatch on laytime saved
1¼% past Windhook, Incorporated; 1¼% to Windhook, Incorporated

"Otherwise terms of the Charter of the S/S 'Pacific Wave' or substitute, dated August 6, 1959 and which is in your possession."

A similar "fixture letter", also dated September 3, 1959, was addressed by Windhook, Incorporated, to World Chartering & Brokerage, Inc.

This charter party of September 3, 1959, by which the S.S. "Jackie Hause" was nominated as a substitute similar type United States flag vessel in the stead of the "Pacific Wave" was duly performed by N.H. Shipping Corporation as the owner of the S.S. "Jackie Hause". In the course of such performance, the S.S. "Jackie Hause" loaded the cargo of corn in bulk at Baton Rouge and on September 21, 1959, three Bills of Lading were issued signed by Dalton Steamship Corporation, as agents for the master. The total freight earned under the charter, less commission but before adjustment for despatch, if any, was $140,323.84. This is the fund in suit.

The Bills of Lading are in evidence as Exhibits F–1, F–2 and F–3 annexed to the pretrial order and stipulation as to facts. They each bear the notation "Freight Prepaid", and provide for the payment of freight "at the rate of freight as per Charter Party" and are subject to the "terms, conditions, and exceptions as per charter party" (which included by reference the provision "6" above quoted, that "Vessel to have a lien on the cargo for all freight, dead freight, demurrage or average.").

Prior to the substitution of vessels under the contract of August 6, 1959, and before the loading of this cargo aboard the S.S. "Jackie Hause" and the issuance of these Bills of Lading, World Chartering & Brokerage, Inc., by letter of August 17, 1959, addressed to Sagus Marine Corporation, agents for Ministerio, advised "Re—S/S 'Pacific Wave, or Sub. C/P dated August 6, 1959" that "all freight due under the above noted Charter Party is to be paid to:

Stratford Factors
95 Madison Avenue
New York, New York

for the account of: World Tramping Agencies, Inc." This letter bears an endorsement reading "Consented to Pegor Steamship Corporation by L. P. Katavolos, V.Pres."

Pegor Steamship Corporation did on August 18, 1959, execute and deliver to Stratford Factors an assignment of "all moneys due and to become due" to Pegor under or arising out of the charter of August 6, 1959.

It was thereafter and on October 15, 1959, that Sagus Marine Corporation, as agents for Ministerio de Ganaderia, the shippers, entered into a written agreement with N. H. Shipping Corporation as owner of the S.S. "Jackie Hause" under which the freights due were deposited with Lamorte, Burns & Co., Inc., as escrowee, and the Bills of Lading for the cargo of corn aboard the S.S. "Jackie Hause" were delivered to Sagus. The freights are now held by Lamorte, Burns & Co., Inc., to await determination of the rights in these freights of the parties to these suits.

It is also undisputed that $125,931.65 (or 90% of the freights less allowance for commissions) was on October 15, 1959 deposited with Lamorte, Burns & Co., Inc., in escrow and that $9,931.65 of that sum has by consent been released. On February 5, 1960 by consent additional freights were attached and added to the balance held in escrow by Lamorte, Burns. It does not appear that there will be any surplus of the freights collected payable to Stratford after full payment to N. H. Shipping Corporation of the charter hire due it.

The claim of N. H. Shipping Corp. to these freights arises out of the use of its vessel to carry the cargo hired; the claim of Stratford out of a loan made to Pegor which was secured by the freights to be earned on this very same cargo by the vessel chartered by Pegor.

It is well established in maritime law that the vessel has a lien on the cargo it carries for the cost of transporting it and that this is a maritime lien under which the cargo is made subject to a libel in rem and may be sold for the benefit of the vessel. Unlike the ordinary maritime lien, however, the lien on cargo depends on possession of the cargo and is lost by unconditional surrender to the consignee. This right of the vessel is so strong in the eyes of the admiralty that it will only be considered relinquished by the most unequivocal and express terms or the most absolute and unconditional surrender; The Bird of Paradise, 5 Wall. 545, 72 U.S. 545, 18 L.Ed. 662; Drinkwater v. The Spartan, Fed.Cas. No. 4,085. So respected is this paramount right that had the charter party in suit been only between N. H. Shipping Corp. as owner of the S.S. "Jackie Hause" and Pegor as charterer and shipper of its own cargo, N. H. Shipping Corp.'s lien would exist without any specific clause or provision. However, since the cargo was owned by Ministerio and not the charterer, it was essential in order to protect N. H. Shipping Corp.'s lien to provide for it in the charter and thus give notice to Ministerio of the vessel's claim against the charterer's right to the freights—which right could not arise until after N. H. Shipping Corp. had been paid its full hire.

The provision in the charter that the Bills of Lading were to contain a clause reserving the vessel's lien on the cargo for all freight and the clause in the Bills of Lading that they were subject to the terms and conditions of the charter party in effect incorporated in

the charter party the reservation of lien clause. United States v. Wessel, Duval & Co., D.C., 115 F.Supp. 678; Standard Oil Co. of California v. United States, D.C., 59 F.Supp. 100.

Much is attempted to be made by Stratford of the fact that N. H. Shipping Corp's lien is claimed now against "freights" while the charter party reserved a lien on "cargo" only but while this might be significant under other circumstances and under another charter party it is not here, for the "freight" earned by the cargo represent (exclusive of commissions) the sum to be paid for the use of the ship and a lien on cargo when the vessel has not been paid its hire is a lien on the sum earned by the cargo. Jebsen v. A Cargo of Hemp, D. C., 228 F. 143.

Under the August ("Pacific Wave") charter party, Pegor as charterer had the right to nominate a vessel other than the "Pacific Wave" to carry the cargo. It nominated the "Jackie Hause" which it did not own. By "addendum No. 1" and the fixture letter of September 3, 1959 the terms of the August charter were made the terms of the "Jackie Hause" charter and the clause reserving to the owner of the "Pacific Wave" or substitute the lien on cargo covered the owner of the "Jackie Hause" as substitute vessel. The "Pacific Wave" charter party was a voyage charter, which meant that Pegor (as owner of the "Pacific Wave" had it made the voyage) would have remained in control and possession of her and entitled to her hire and freights. As such owner in control Pegor had unquestionably the right which arose at the time of the August charter to assign her future freights inchoate as they were, and having done so, assuming a valid irrevocable assignment, it would have waived its lien on the cargo in favor of Stratford, its assignee. But since freight is incident to the ship such an assignment can be made only by the owner of the vessel or one who stands in his shoes—as in a bareboat or demise charter where the charterer succeeds to the rights and responsibilities of the owner. American Steel Barge Co. v. Chesapeake & Ohio Coal Agency Co., 1 Cir., 115 F. 669; Drinkwater v. The Spartan, supra. The assignment to Stratford was no part of the charter party so that when the "Jackie Hause" was tendered under the "Pacific Wave" charter party she did not take subject to the assignment, and the right of Pegor,—good while the "Pacific Wave" was the chartered vessel to assign her freights—vanished when the "Jackie Hause" was substituted. The inchoate rights to freights of the "Pacific Wave" which Pegor had assigned never ripened. Pegor was not the owner of the "Jackie Hause" and under the voyage charter it did not become the owner pro hac vice; N. H. Shipping Corp. remained in full control and possession of the "Jackie Hause", it disbursed her wages, fuel, stores, stevedoring and agency fees, and it issued the Bills of Lading marked "freights as per charter party" signed by her Master. Having no rights to the freights of the "Jackie Hause", Pegor could not assign them; as voyage charterer all it could assign was surplus freights earned, if any, after full payment of the vessel's hire and its lien on such surplus could not arise until that time.

Stratford when it took an assignment from "assignor, as owner or chartered owner of * * * Pacific Wave, or substitute" under the voyage charter of August, must be deemed to have taken with notice of the reservation of owner's lien therein provided, and to have assumed the risk that as chartered owner under a voyage charter its assignor's rights were subordinate to those of the owner. With reasonable diligence it could have ascertained the status of Pegor; it did not, and as assignee it received nothing more than Pegor had to give. The lien of N. H. Shipping Corp. on the freights of the "Jackie Hause" arose in September when she was tendered under the charter and this lien could not, absent an express agreement by N. H. Shipping Corp. to that effect, be disturbed by a

prior assignment to Stratford. The Freights of the Kate, D.C., 63 F. 707; the Solhaug, D.C., 2 F.Supp. 294. Of course, Stratford's situation certainly would be different had the assignment been to secure advances made by it to disburse the "Pacific Wave" or its substitute the "Jackie Hause" on its voyage. International Refugee Organization v. Maryland Drydock Co., 4 Cir., 179 F.2d 284; The Freights of the Kate, supra; Todd Shipyards Corporation v. The City of Athens, D.C., 83 F.Supp. 67. No claim is made that this was the case and the evidence with respect to the "Jackie Hause" is quite to the contrary.

It is not urged that N.H. Shipping Corp. when it tendered the "Jackie Hause" had knowledge of the assignment to Stratford, but even if it had, since there was nothing in the charter party inconsistent with reservation of its lien, it would not inescapably follow that its action in tendering its vessel with that knowledge was so incompatible as to overcome the presumption in favor of its lien and compel a conclusion that it was relying solely on the personal credit of Pegor for payment of its charter hire. Raymond v. Tyson, 17 How. 53, 58 U.S. 53, 15 L.Ed. 47; Drinkwater v. The Spartan, supra.

Nor was the delivery of the cargo to Ministerio at the port of discharge a relinquishment of the owner's lien on the cargo. While N. H. Shipping Corp.'s lien was dependent on possession of the cargo and it had the right to pursue the cargo in payment, it could substitute the freights for the cargo and pursue them. It was only on condition that the freights be substituted for the cargo that N. H. Shipping Corp. released it. Ministerio had been willing to pay the freights to N. H. Shipping Corp. on condition that N. H. Shipping Corp. indemnify it from any liability to Stratford; upon N. H. Shipping Corp.'s inability to do so it was agreed in writing that the money would be deposited in escrow to await determination of ownership as between N. H. Shipping Corp. and Stratford. The deposit in escrow by Ministerio upon N. H. Shipping Corp.'s demand was tantamount to a deposit of the freights in the registry of the Court —a very usual and sensible course. To say that the "Jackie Hause" had no choice but to sit in a foreign port with the cargo in its hold or in a warehouse at its risk in order to protect its lien disregards law and commonsense. The delivery of the cargo by N. H. Shipping Corp. did not effect that absolute and unconditional change of possession to the consignee sufficient to extinguish the vessel's lien for payment of its charter hire. United States v. Freights of Mt. Shasta, 274 U.S. 466, 47 S.Ct. 666, 71 L.Ed. 1156; The Bird of Paradise, supra; The Volunteer, C.C.Mass.1834, Fed.Cas. No. 16,991; McBrier v. A Cargo of Hard Coal, D.C., 69 F. 469; Bank of British North America v. The Freights, etc. of the Hutton, 2 Cir., 137 F. 534.

We conclude that the lien of N. H. Shipping Corp. attached to the exclusion of Stratford's lien to the amount of the charter hire due it, that the lien was never surrendered and that N. H. Shipping Corp. is entitled to be paid its full charter hire out of the funds held in escrow.

Let an appropriate decree be submitted directing payment of the funds attached in these two suits in the hands of Lamorte, Burns & Co., Inc., into the registry of the Court providing for judgment in favor of N. H. Shipping Corp. in Action No. 199–217 and payment to it of the amount agreed on and dismissing the libel of Stratford in Suit No. AD. 199–331 with costs; subject, however, to any other liens now of record against the said freights.