LUCKENBACH OVERSEAS CORPORATION, as Owner of the S. S. AUDREY J. LUCKENBACH, Libelant,

v.

The sub-freights of the S. S. AUDREY J. LUCKENBACH, Respondent.

United States District Court
S. D. New York.
Sept. 17, 1963.

Healy, Baillie & Burke, New York City, for libelant. Raymond J. Burke, New York City, of counsel.

Foley & Grainger, New York City, for intervening libelant, Cooper Stevedoring of Louisiana, Inc. Joseph K. Grainger, New York City, of counsel.

WYATT, District Judge.

A motion is made by Cooper Stevedoring of Louisiana, Inc. ("Cooper") under Admiralty Rules 34 and 42 for an order or orders

a. permitting Cooper to intervene and to file an intervening libel;

b. dismissing the libel of Luckenbach Overseas Corporation ("owner"); and

c. directing payment to Cooper by Barr Shipping Co., Inc. ("Barr") of certain freight moneys admittedly owed by Barr (these are apparently referred to in admiralty, at least as against the owner, as "subfreights" but the shorter form will be here used).

The contest is for the Barr freight moneys between Cooper, a stevedore which performed stevedoring services for the S.S. Audrey J. Luckenbach, and that vessel's owner, which is the libelant here.

The owner chartered the vessel on July 31, 1962 to Seasons Navigation Corporation ("Seasons") under a charter party of the same date in a standard form which had a usual Clause 18 giving the owner a lien on all cargoes and freights for amounts due the owner, and further providing that the charterer would not "suffer" nor "permit to be continued" any lien which "may have priority" over the owner's lien.

The vessel was at New Orleans in May 1963, among other things to take on a shipment of tallow—of which Barr was the shipper—for Pakistan. Seasons asked Cooper to perform stevedoring services but Cooper refused until some arrangement was made respecting its then charges and past amounts due from Seasons. Thereupon as an inducement to Cooper, Seasons under date of May 10, 1963 irrevocably instructed Barr to pay directly to Cooper the freight moneys due on the tallow shipment; apparently the freight was due when the goods were on board the vessel. Barr on May 10, 1963 confirmed to Cooper in writing that it would pay to Cooper as instructed. Cooper then performed its services, the tallow was loaded and the Barr freights became due.

Later in May 1963 Seasons asked the owner to advance money to pay for bunkers for the voyage. The owner did so but insisted on an assignment from Seasons, which was given under date of May 22, 1963, of all freight "not already paid and not previously assigned either to you or to others". The assignment was to "Maritime Overseas Corporation" which must be in some way connected with the owner.

On June 5, 1963 Seasons failed to pay the charter hire of $96,500 due that day.

On June 13, 1963 the owner filed a libel in this Court against the freight moneys in the hands of Barr, which had not yet made any payment to Cooper. Thereafter Cooper made the present motion, submitting an intervening libel asserting a superior right to the Barr freights.

▮ The objection to intervention is based on an argument that Cooper does not have any claim of a maritime nature but is assignee of a legal (that is, non-maritime) cause of action. The point is, of course, that jurisdiction of a "civil case of admiralty or maritime jurisdiction" (28 U.S.C.A. § 1333) means that the claim asserted must be maritime in nature. Cooper's claim is clearly such, however, whether Cooper be entitled to a lien or not. The claim assigned by Seasons was one to freight on cargo; the reason for the assignment was to secure stevedore service for the vessel, a maritime service.

That part of the motion which asks for allowance of intervention under Admiralty Rule 34 is therefore granted and the intervening libel is accepted and permitted to be filed.

There is no genuine issue as to any material fact and both parties, Cooper and the owner, ask that their conflicting claims be determined on their merits.

▮ Under Clause 18 of the charter party, the owner of the vessel was given and had a lien on all freights earned by the vessel. This lien came into existence as an inchoate lien on the date of the charter party, namely, July 31, 1962. The time of accrual of such a lien was specifically considered in American Steel

Barge Co. v. Chesapeake & O. Coal Agency Co., 115 F. 669 at 673 (CCA 1st Cir. 1902) where the Court said; emphasis supplied) with reference to a clause like Clause 18:

> "Applying either of these lines of reasoning, the rights of the owner of the vessel under the clause in question *reverted to the date of the execution of the charter,* and did not accrue as of the date of the giving of the bill of lading, as now supposed by the owner of the cargo.
>
> "As, therefore, on the broad rules of the admiralty, the owner of the vessel had a lien on this freight, which *accrued as of the date of the charter,* he stood, in the eyes of the admiralty, which requires no formal instrument, with all the rights of an assignee under a deed of assignment. * * * "

■ At the time Cooper acted as stevedore, the vessel was under the charter party containing Clause 18, under which the charterer (Seasons) had no authority to bind the vessel, that is, to create a lien in favor of Cooper or otherwise. Cooper was bound to use reasonable diligence to discover this charter provision and, of course, could easily have learned of Clause 18. No attempt is made to show ignorance of Clause 18 on the part of Cooper, or that due diligence was used and its existence not discovered. Indeed, Cooper must have known the terms of this usual charter, including Clause 18.

■ Under the circumstances here present, Cooper the stevedore can have no lien on the freights earned by the vessel. The authorities are entirely clear as to this; they are collected and discussed by Judge Bryan in In re North Atlantic & Gulf S.S. Co., 204 F.Supp. 899, 907 (S.D.N.Y.1962).

■ That Cooper took an assignment from the charterer of the freights due from Barr does not improve the claim because the charterer could transfer to Cooper no more than the charterer had; the superior and earlier lien of the own-er was controlling. Judge Ryan dealt with a similar situation in N. H. Shipping Corp. v. Freights of the S.S. Jackie Hause, 181 F.Supp. 165 (S.D.N.Y.1960).

The submission by Cooper for a priority over the owner's lien really comes down to this: at the time Cooper took the assignment (May 10, 1963) and performed the stevedoring services (immediately thereafter), no freights were due and collectible from Barr nor was anything due from the charterer to the owner. This may be accepted as a correct statement of fact but no conclusion can be drawn therefrom of a priority to Cooper. The reason is that the owner had a lien from the date of the charter party; the lien was of course inchoate as to future sums due and as to future freights, but as soon as the freights became due and collectible from Barr (shortly after May 10, 1963) and sums were due under the charter party (June 5, 1963), the lien of the owner became vested and complete. At that point in time Cooper had no lien on the Barr freights and its general unsecured claim could not prevent the vesting of the theretofore inchoate lien of the owner.

Cooper also argues that the owner waived its lien under Clause 18 on the freight, this by taking the assignment from the charterer on May 22, 1963. Cooper cites principally Marshall & Co. v. President Arthur, 279 U.S. 564, 49 S.Ct. 420, 73 L.Ed. 846 (1929). Strictly speaking, the holding in President Arthur was that there never was any lien, rather than that a lien once existing had been given up. Marshall sold coal to the Arthur but made a specific contract which did not provide for any lien, but instead required payment by trade acceptances endorsed by three designated persons; the contract recited that it contained the whole agreement between the parties. The Supreme Court declared (279 U.S. at 572, 49 S.Ct. at 423):

> "Applying the principles stated in the foregoing cases, we think that the libellant, having made specific contracts for an express security, in-

stead of resting on the lien which the law would otherwise give, must rely on the contracts it made for itself, and cannot now, in a change of circumstances, resort to the lien it would have had in the absence of the special agreements; and that by taking other and different security, upon which it relied, and which it still retains, without stipulating for the retention of the lien, it has waived the lien which it otherwise would have had."

This is so vastly different from the situation here, as to be of no value as precedent.

■■ There is nothing inconsistent between retention of the owner's lien and taking the May 22, 1963 assignment, which does not even refer to the lien much less provide for its waiver. A strong showing is required before waiver can be found. Judge Ryan said in the "Jackie Hause" case, above, in dealing with a contention that the lien had been lost by other conduct (181 F.Supp. at 169):

"This right of the vessel is so strong in the eyes of the admiralty that it will only be considered relinquished by the most unequivocal and express terms or the most absolute and unconditional surrender; The Bird of Paradise, 5 Wall. 545, 72 U.S. 545, 18 L.Ed. 662; Drinkwater v. The Spartan, Fed.Cas. No. 4,085. * * "

Considering, moreover, that the burden to establish waiver is on Cooper (The Solhaug, 2 F.Supp. 294, 301; S.D.N.Y. 1931), this contention must be rejected.

Let an appropriate decree be submitted allowing the filing of the intervening libel of Cooper, dismissing the intervening libel on the merits, and directing payment by Barr of the freight moneys to the owner.

### On Motion to Reargue

This motion is by intervenor Cooper Stevedoring of Louisiana, Inc. ("Cooper") to reargue its motion decided in an opinion filed August 19, 1963.

### a.

Intervenor properly points out that the opinion refers to Clause 18 as giving the charterer no authority to "bind the vessel", meaning to create liens against it, whereas intervenor is not claiming any lien on the vessel, but rather a lien on the sub-freights by assignment from the charterer. The opinion notes that by "reasonable diligence" Cooper could have learned of Clause 18 in advance of its assignment, whereas intervenor submits that "reasonable diligence" is irrelevant to the question of its claimed lien on the sub-freights.

The opinion in this respect may create confusion between a lien on the vessel and a lien on the sub-freights. Nothing turns on this, however, and it was not any basis for the decision.

■ The point is that Cooper knew, or by "reasonable diligence" could have known, of Clause 18; this same Clause 18 gives the owner a lien on all sub-freights. Although Cooper even now suggests that no such lien "was called to Cooper's attention", the existence of Clause 18 means that the May 10, 1963 assignment was taken by Cooper with notice, actual or constructive, of the owner's lien on all sub-freights.

### b.

Cooper takes issue with the conclusion that it had no lien on the Barr sub-freights. The contention is that the charterer had a lien on the sub-freights and that this was assigned to Cooper along with the sub-freights. Presumably the claimed assignment from Barr is relied on to avoid the rule that "[t]he stevedore may not have a lien on earned subfreights unless he has a lien on the vessel" (In re North Atlantic & Gulf S.S. Co., 204 F.Supp. 899, 907, S.D.N.Y. 1962).

Of course, there was no actual assignment to Cooper of the Barr sub-freights, much less of a lien. An irrevocable instruction letter was given Barr to pay the sub-freights to Cooper.

**577**

It seems that a maritime lien may be assigned. See, for example, Gilmore and Black, page 519.

Assuming (without deciding) that the claim and lien of the charterer passed by assignment to Cooper, the latter would then have a lien on the Barr sub-freights. As the opinion points out, however, the charterer could give up to Cooper no more than it had and whatever it had was subject to the superior and earlier lien of the owner.

### c.

Intervenor claims error in a phrasing of its argument by the Court that no freights were due from Barr when the "assignment" was made on May 10, 1963. It is difficult to follow intervenor in this area but in any event the Court accepts that the phrasing of the argument was mistaken. The fact is, however, that on May 10, 1963, the Barr cargo had not yet been loaded and no freights were then due.

### d.

Assuming that intervenor has a lien as assignee, it stands in the shoes of its assignor (the charterer) and, in the Court's opinion, the lien of the owner is superior.

The material from Mr. Poor's lecture has been considered and does not appear contrary to the decision here. Mr. Poor recognizes that "the owner is able to place a lien on that collect freight" and refers to notice by owner to shipper or to legal proceedings.

In the case here, the owner went beyond Mr. Poor's suggestion of writing a letter. The sub-freights had not been paid by Barr and these proceedings were commenced by the owner to execute its lien.

Of course, had Barr paid the charterer, the situation as to Barr would be different. But there has been no payment.

Referring to Clause 18, Robinson on Admiralty has this to say (p. 636; emphasis supplied):

> "The provision gives the owner an equitable lien in admiralty *as of the date of the charter* on any freight subsequently stipulated to be paid and subrogates the owner to the lien of the charterer for the freight and to the remedies of the charterer to enforce its payment."

### e.

As for the bills of lading issued to Barr, it seems irrelevant whether they were issued for the master or for the owners. If Barr has not paid, nothing in the bill of lading would create any estoppel for the benefit of Barr, and in fact Barr admits liability and is ready to pay. There can be no estoppel for the benefit of Cooper because the bills of lading were not issued to Cooper, nor did Cooper rely on anything in them or anything from the owner.

The motion for reargument is granted and the briefs of counsel are considered as submitted on such reargument.

The Court adheres to the decision contained in the opinion filed August 19, 1963.