**COMPANIA DE NAVEGACIONE ALMIRANTE S. A. PANAMA, Libelant,**

v.

**CERTAIN PROCEEDS OF CARGO, etc., of the vessel S. S. SEARAVEN; Kenray, Inc., a corporation; and Beverly Hills National Bank & Trust Company, a national banking association, Respondents.**

No. 64–1750.

United States District Court
C. D. California.

Dec. 15, 1967.

Lillick, McHose, Wheat, Adams & Charles, by, David Brice Toy, Los Angeles, Cal., for libelant.

Loeb & Loeb, by, Jerome Goldberg, Los Angeles, Cal., for respondent Beverly Hills National Bank.

## OPINION

WHELAN, District Judge.

In this action Libelant, a Panamanian corporation and owner of the vessel S.S. SEARAVEN, by its complaint seeks to libel the proceeds of cargo, freights and subfreights of the S.S. SEARAVEN. Kenray, Inc., a corporation, one of the Respondents whose default has been entered herein, was charterer of the SEARAVEN under a voyage party entered into with Libelant on September 30, 1964; the charter party in a standard Gencon form let the SEARAVEN to Kenray for a voyage from one or two safe California ports to one or two discharging ports in. Japan or Formosa. Under the terms of the charter party the charter hire, which remains unpaid, was in the sum of $96,750.00. The charter party called for payment of 90% of the charter hire within seven days after delivery of signed bills of lading, signed by the owner and delivered to Kenray.

Under the terms of the charter party Libelant has an express lien upon cargo for freight.

. The vessel was delivered to Kenray and thereupon was loaded with approximately 10,000 tons of scrap and thereafter proceeded to Taiwan, Formosa.

For some time prior to the charter of the SEARAVEN, Kenray and Respondent Beverly Hills National Bank & Trust Company, hereinafter "Bank," had been discussing means whereby the large indebtedness of Kenray to the Bank could be fully or at least largely satisfied. An investigation was made to determine where the scrap then in Kenray's hands could best be marketed and it was decided that Japan or Formosa provided the most advantageous market.

Thereupon the question of the charter of a ship for carriage of scrap occurred and it was determined that additional scrap should be purchased with funds to be supplied by the Bank to fully utilize the capacity of a chartered ship of the type being considered. The Bank agreed to and did give Kenray also a bill of credit to cover the cost of stevedore services for the loading of cargo on the SEARAVEN. Kenray, during the course of these discussions, indicated that it could probably procure a ship from Libelant without the issuance of a bill of credit by the Bank for charter hire in view of past favorable business relationships between Kenray and Libelant concerning charter hire, and the Bank requested that Kenray attempt such course in order that the Bank's financial position would not be further affected by the issuance of a letter of credit for charter hire. Thereafter the charter party was entered into between Libelant and Kenray without any letter of credit being issued to Libelant for charter hire.

During October and early November 1964, Libelant's duly authorized agent executed and delivered to Kenray bills of lading covering all of the cargo. Kenray was named as shipper in all bills of lading other than one in which Purdy International Corporation is named as shipper of 999.86 tons of scrap. Kenray delivered all of its said bills of lading to the Bank and drew and delivered to the Bank drafts on all the foreign letters of credit furnished by consignees of the cargo of which Kenray was designated shipper, in favor of Respondent Bank; prior to the commencement of this action and in late November 1964, Respondent Bank collected all of the drafts drawn by Kenray in the total amount of $535,371.21. At the time that Kenray delivered the bills of lading and drafts to the Bank, Kenray was indebted to the Bank in the sum of approximately $742,203.81, and legal title to the scrap on the SEARAVEN, other than the scrap owned by Purdy International

Corporation, was in the name of the Bank to secure monies owed to it by Kenray.[1]

When the proceeds of the drafts were received by the Bank, the Bank then asserted its banker's lien against all of such proceeds. The Bank, on December 2, 1964, also asserted its banker's lien against the commercial account of Kenray in said Bank for the sum of $16,-387.46; in such commercial account at that time was subfreight paid by Purdy International Corporation to Kenray in the sum of $9,998.60, such subfreight being for the carriage of Purdy's cargo on the SEARAVEN.

It was not until after Kenray had delivered to the Bank all of the bills of lading, together with the drafts for collection, that the Bank representative stated that "Kenray will pay for the freight"; however, no representative of the Bank told Kenray that the Bank would not permit the proceeds of the foreign letters of credit to be used to pay for the ocean freight.

Before the delivery of any of the cargo of the SEARAVEN to any of the consignees Libelant filed its libel, and prior to such delivery of any of the cargo the Court, upon Libelant's motion, ordered that proceeds of cargo, freights and subfreights be brought into Court to answer the libel. Thereupon and also before the delivery of any of the cargo, the parties stipulated that the amount to be deposited pursuant to Court's order was in the principal sum of $145,000.00 without prejudice to the right of the Bank to contend that in fact the order of Court ordering the deposit of proceeds of cargo, freights and subfreights was improper.

## THE JURISDICTION OF THE COURT

This Court had jurisdiction to require Respondent Bank to deposit the funds ordered deposited to the extent necessary to satisfy charter hire. The freight earned by the cargo represents the sum to be paid for the use of the ship and a lien on cargo when the vessel has not been paid its hire is a lien on the sum earned by the cargo. N. H. Shipping Corp. v. Freights of the S/S Jackie Hause, 181 F.Supp. 165, 170 (S.D.N.Y.1960); Jebsen v. A Cargo of Hemp, 228 F. 143 (D.C.Mass.1915).

■ Where freights have been collected by the charterer and the freights are within the territorial jurisdiction of the Court, the Court has jurisdiction in rem over such freights. Lathrop v. Freights of the John Ena, 212 F. 560 (N.D.Cal.1914).

■ Wherever a lien exists and attaches upon proceeds, an Admiralty Court may exert its jurisdiction over such proceeds by way of monition addressed to the party holding them. See Sheppard v. Taylor, 5 Peters 675, 8 L. Ed. 269 (1831).

## THE SHIPOWNER'S LIEN WAS NOT EXTINGUISHED

■ Respondent Bank contends that Libelant shipowner lost its lien on cargo by failing to libel the cargo for charter hire prior to delivery of the cargo to the consignees. This Court considers such contention without merit. Here Libelant attached the proceeds or freight earned by the cargo in the hands of Respondent Bank while the cargo was still in the possession of the ship. It would seem that the rule announced in N. H. Shipping Corp. v. Freights of the S/S Jackie Hause, supra, 181 F.Supp. at p. 171 of the opinion, is here applicable. In the *Freights of the S/S Jackie Hause* the Court stated: "Nor was the delivery of the cargo to Ministerio at the port of discharge a relinquishment of the owner's lien on the cargo. While

---

1. Part of the cargo actually was purchased in 1964 with monies then advanced by the Bank for the purpose of utilizing the complete capacity of the ship which was to be chartered by Kenray for the purpose of shipping the cargo already owned by Kenray subject to the security rights of the Bank. By such additional purchase the obligation to pay dead freight on any unused capacity of the ship would be avoided.

N. H. Shipping Corp.'s lien was dependent on possession of the cargo and it had the right to pursue the cargo in payment, it could substitute the freights for the cargo and pursue them. It was only on condition that the freights be substituted for the cargo that N. H. Shipping Corp. released it. * * * To say that the 'Jackie Hause' had no choice but to sit in a foreign port with the cargo in its hold or in a warehouse at its risk in order to protect its lien disregards law and commonsense. The delivery of the cargo by N. H. Shipping Corp. did not effect that absolute and unconditional change of possession to the consignee sufficient to extinguish the vessel's lien for payment of its charter hire. United States v. Freights of Mt. Shasta, 274 U. S. 466, 47 S.Ct. 666, 71 L.Ed. 1156; The Bird of Paradise, supra, [5 Wall. 545, 72 U.S. 545, 18 L.Ed. 662;] The Volunteer, C.C.Mass.1834, Fed.Cas.No.16,991; McBrier v. A Cargo of Hard Coal, D.C., 69 F. 469; Bank of British North America v. The Freights, etc. of the Hutton, 2 Cir., 137 F. 534."

## THE COURT MAY FIX A REASONABLE FREIGHT WHERE THE CHARTERER OWNS THE CARGO

■ As against the contention of Respondent Bank that there is no ascertainable freight in this case inasmuch as the charterer Kenray owned all but a small portion of the cargo, the Court can fix a reasonable charge for freight for all of the cargo here and carve such freight out of the proceeds of cargo. Whitney v. Tibbol, 93 F. 686, 688 (9th Cir. 1899). In this matter the parties agreed upon a charter hire for the SEARAVEN. The Court considers the amount of such charter hire as evidence of the reasonable freight to be here carved out by the Court; in addition, it is known what Purdy International Corporation, the owner of approximately 10% of the whole cargo, paid to Kenray as freight for the carriage of Purdy's cargo; the rate per ton paid by Purdy is evidence of the reasonable rate per ton for the carriage of Kenray's cargo; and the rate per ton charged Purdy would, when applied to the entire cargo, produce for the freight for the entire cargo of the SEARAVEN an amount greater than the amount fixed as charter hire by Libelant and Kenray. The Court fixes the reasonable freight for the carriage of the whole cargo in the sum of $96,750.00, the amount of the charter hire agreed upon.

## LIBELANT IS NOT ESTOPPED TO ASSERT LIEN

■ The fact as contended by the Bank that Libelant could not have asserted its lien for charter hire on the cargo as against the consignees of the cargo because of the payment in advance without notice of Libelant's rights by the consignees for the cargo including prepaid freight charges, is not a defense here for the Bank. A shipowner has a maritime lien for charter hire on cargo where the lien is, as here, reserved initially in the original charter and incorporated into the bills of lading, against all others than good faith purchasers of the cargo who have paid for it in advance without notice of the shipowner's rights. See Toro etc. Corporation v. Bacon etc. Company, 364 F.2d 928, 930 (5th Cir. 1966).

## EQUITABLE RELIEF IS HERE PROPER

■ Here Libelant's claim that it would be grossly inequitable if the Bank could avoid the payment of charter hire, i.e. reasonable freight, is sound. The whole purpose of the charter was to secure money to reduce, if not to extinguish, Kenray's debt to the Bank. The Bank and Kenray discussed the procurement of the chartered vessel and the Bank provided additional money to buy more scrap to fill out the cargo capacity of the SEARAVEN, thus to avoid obligation for dead freight. The Bank was familiar with the bad financial position of Kenray and had discussed with Kenray methods of repairing such condition. The amount of money owed by Kenray to the Bank was a very large sum from

the Bank's standpoint and the Bank encouraged Kenray to secure the charter of the SEARAVEN without the issuance of a letter of credit by the Bank so that the Bank's financial position with respect to Kenray might appear in a better light to anyone examining such financial relationship. It was only after the Bank had all of the signed bills of lading with drafts for collection of the amounts due thereon that its representative suggested to Kenray that Kenray take care of paying for the charter hire itself.

■ While a Court of Admiralty will not enforce an independent equitable claim merely because it pertains to maritime property, an Admiralty Court that has secured jurisdiction as an Admiralty Court may then proceed in the trial of the cause on equitable principles. Putnam v. Lower, 236 F.2d 561, 568 (9th Cir. 1956). See Swift & Co. v. Compania Colombiana Del Caribe, 339 U.S. 684, 691, 70 S.Ct. 861, 94 L.Ed. 1206. In the instant action, the Court sitting in Admiralty has jurisdiction concerning the validity of Libelant's lien for freight and its right to recover the charter hire under the charter party. The Court here had jurisdiction to attach the proceeds of the cargo, i.e. freight earned by the cargo, under the circumstances here present. As the Supreme Court in Swift & Co. v. Compania Colombiana Del Caribe, supra, at p. 691, 70 S.Ct. 861, ruled, an Admiralty Court can, as a means of effectuating a claim incontestably in Admiralty, determine subsidiary or derivative equitable issues.[2]

To stay the hands of Admiralty "as to a matter intrinsically nonmaritime but 'necessary to the complete adjustment of rights over which admiralty has independent jurisdiction'" would seriously impair the discharge by Admiralty of the task which belongs to it. Swift & Co. v. Compania Colombiana Del Caribe, supra, at p. 693, 70 S.Ct. at p. 867.

## LIBELANT'S CLAIM FOR INDEMNITY

In addition to asserting a lien for the amount fixed as charter hire, Libelant here seeks also to recover any amount for which it may become obligated to Metropolitan Stevedore Co. for stevedoring work in the loading of the SEARAVEN prior to its departure for Formosa. The charter party does not give any lien to Respondent to cover such liability if any exists. In addition, Metropolitan Stevedore Co. did not look to the ship for compensation for its services; rather it demanded a letter of credit from Kenray and Kenray furnished the same.[3]

Counsel for Libelant are directed to prepare proposed findings of fact and conclusions of law and judgment consistent with the Court's decision herewith, and to serve and file the same. No judgment is to be entered until the Court signs the formal written judgment.

2. In Swift & Co. v. Compania Colombiana Del Caribe, supra, an issue of fraud arose in connection with an attachment in Admiralty on a claim arising upon a contract of an affreightment supplemented by charges of negligence in a non-delivery of a sea cargo—matters in the words of the Supreme Court "obviously within Admiralty jurisdiction." Libelants, as an incident to the claim in order to secure respondent's appearance and to insure the fruits of a decree, made the attachment. The jurisdiction of the Court to determine the fraud issue was upheld. In the case at bar, Respondent Bank is in practical effect the beneficiary of the charter party between Kenray and Libelant, and the charter of the Searaven was effected only through the active financial assistance of the Bank. As before stated, a substantial portion of the cargo was purchased with money supplied by the Bank for the purpose of filling out the cargo for the charter in question.

3. Metropolitan Stevedore Co. failed to timely assert its rights under the terms of the letter of credit and it thereafter filed a libel against the Searaven for compensation for stevedoring services when the Searaven was in Honolulu en route to Formosa. The Hawaiian action has as yet not been disposed of.