**BEVERLY HILLS NATIONAL BANK & TRUST CO., Appellant,**

v.

**COMPANIA DE NAVEGACIONE ALMIRANTE S.A., PANAMA, Appellee.**

No. 22694.

United States Court of Appeals, Ninth Circuit.

Jan. 20, 1971.

As Modified on Denial of Rehearing Feb. 17, 1971.

Jerome L. Goldberg, argued, of Loeb & Loeb, Los Angeles, Cal., for appellant.

David Toy, argued, of Lillick, Mc-Hose, Wheat, Adams & Charles, Los Angeles, Cal., Cooper, White & Cooper, San Francisco, Cal., for appellee.

Before BARNES, BROWNING, and KILKENNY, Circuit Judges.

BROWNING, Circuit Judge.

Invoking admiralty jurisdiction, Compania De Navegacione Almirante, owner of the S.S. Searaven, initiated this proceeding to recover charter hire due Compania under a charter party agreement with Kenray, Inc., an exporter of scrap metals, by enforcing a lien, or imposing a constructive trust, upon funds held by Beverly Hills National

Bank & Trust Company. The district court awarded Compania $96,750 from the fund, the amount of the charter hire, plus interest. Compania De Navegacione Almirante S.A. Panama v. Certain Proceeds of Cargo, 288 F.Supp. 77 (C. D.Cal.1967).[1] We reverse.

Kenray was heavily indebted to the bank, which held a security interest in certain scrap metal owned by Kenray. Kenray and the bank agreed that the scrap would be sold in an overseas market to enable Kenray to reduce its debt to the bank. They agreed that Kenray would charter a vessel to carry the metal abroad and would purchase additional scrap with funds to be supplied by the bank in order to utilize the full capacity of the chartered ship. The bank financed the purchase of the additional scrap and provided a letter of credit to cover stevedoring service, but asked Kenray to procure a vessel without a letter of credit from the bank for charter hire.

Kenray chartered the Searaven from Compania to carry the scrap metal to discharging ports in Japan or Formosa. The charter agreement provided for charter hire of $96,750—90 per cent to be paid within seven days after delivery of signed bills of lading marked "Freight Prepaid as Per Charter Party"; the balance payable after discharge of the cargo. The bank was not party to the charter party agreement, and did not issue a letter of credit for charter hire.

Kenray contracted to sell the scrap to several Formosa firms, payment to be by foreign letters of credit in favor of Kenray to be drawn against upon presentation of freight prepaid bills of lading.

Kenray's scrap,[2] plus a quantity owned by Purdy International Corporation, was loaded aboard the Searaven, and Compania's agent issued "Freight Prepaid" bills of lading to Kenray. Kenray delivered bills of lading representing Kenray's portion of the cargo (about 90 per cent) to the bank, together with drafts in favor of the bank on the foreign letters of credit furnished by the consignees. The bank collected the drafts and asserted a banker's lien against the proceeds. The bank also asserted a banker's lien against Kenray's commercial account containing the freight paid to Kenray by Purdy for carriage of Purdy's scrap on the Searaven.

While the Searaven was en route to Formosa, Compania instituted the present proceeding as a libel in rem and in personam for charter hire against "the proceeds of cargo, freights and subfreights of the S.S. Searaven," and against Kenray and the bank. Compania asserted that it had a maritime lien on the cargo for charter hire and that this lien attached to the proceeds of the letters of credit collected by the bank. The district court ordered a portion of the fund sufficient to satisfy the charter hire brought into court under former General Admiralty Rule 37, now Supplemental Rule C(a) of the Federal Rules of Civil Procedure.

When the Searaven arrived in Formosa, the captain, acting for Compania, declined to relinquish possession of the cargo until the consignees guaranteed payment of both charter hire and the cost of repairs made in Hawaii en route to Formosa. The captain discharged the cargo on Compania's instruction, however, after the consignees posted bond for the cost of repairs.

Absent an inconsistent agreement, the vessel owner has a lien on cargo for freight. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U.S. 490, 497, 43 S.Ct. 172, 67 L.Ed. 364 (1923);

---

1. The district court entered an in personam judgment against Kenray, which defaulted upon stipulation. The court denied Compania's claim for indemnification for stevedoring charges asserted against the Searaven in a separate proceeding; but Compania does not appeal.

2. The bank held legal title to all of Kenray's scrap as security.

The Bird of Paradise, 72 U.S. (5 Wall.) 545, 555, 18 L.Ed. 662 (1866); The Eddy, 72 U.S. (5 Wall.) 481, 18 L.Ed. 486 (1866); The Saturnus, 250 F. 407, 409–410 (2d Cir. 1918); Gilmore & Black, The Law of Admiralty § 3–45, at 165 (1957).

■ Like a land carrier's common-law possessory lien, and unlike the ordinary maritime lien, the vessel owner's lien on cargo for freight continues only so long as the cargo remains in the owner's actual or constructive possession. It is extinguished by unconditional delivery of the goods. The Maggie Hammond, 76 U.S. (9 Wall.) 435, 449–450, 19 L.Ed. 772 (1869) (dictum); The Bird of Paradise, *supra,* 72 U.S. at 556; Sears v. Wills, (4,885 Bags of Linseed) 66 U.S. (1 Black) 108, 112–113, 17 L.Ed. 35 (1861); Gilmore & Black, *supra,* at 165–166. *See also* Krauss Bros. Co. v. Dimon S.S. Corp., 290 U.S. 117, 125–126 n. 3, 54 S.Ct. 105, 78 L.Ed. 216 (1933).

The district court held that release of the cargo to the Formosan consignees did not extinguish the cargo lien because Compania, prior to release, attached funds representing the "proceeds" of the cargo. The court rested its ruling entirely upon N.H. Shipping Corp. v. Freights of the S/S Jackie Hause, 181 F.Supp. 165, 170 (S.D.N.Y. 1960).

In *Jackie Hause,* the owner discharged the cargo only after the shipper-consignee agreed to deposit in escrow, to await determination of ownership, the amount due as unpaid freight. The court held that delivery of the cargo on this condition "did not effect that absolute and unconditional change of possession to the consignee sufficient to extinguish the vessel's lien for payment of its charter hire." *Id.* at 171.

---

3. A lien against cargo for general average for repairs made en route is also a possessory lien. *See* DuPont de Nemours & Co. v. Vance, 60 U.S. (19 How.) 162, 171, 15 L.Ed. 584 (1856); Cutler v. Rae, 48 U.S. (7 How.) 728, 731, 12 L.Ed. 890

■ In the present case, Compania conditioned discharge upon the posting of security for payment of costs of repair;[3] but so far as charter hire was concerned, Compania released the cargo unconditionally. Under the authorities cited above, Compania thereby relinquished its lien on cargo for freight.

Compania seeks to sustain the judgment on a second theory, namely, that under the charter party it had a non-possessory lien on the freights and sub-freights earned by the cargo, and that the attached funds included such freights.

■■ A lien on freights is lost, however, if the charges are paid without notice of the shipowner's rights. *See* Marine Traders, Inc. v. Seasons Navigation Corp., 422 F.2d 804, 806–807 (2d Cir. 1970); Hall Corp. v. Cargo Ex Steamer Mont Louis, Etc., 62 F.2d 603, 605 (2d Cir. 1933) (dictum); In re North Atlantic & Gulf Steamship Co., 204 F.Supp. 899, 904 (S.D.N.Y.1962), aff'd sub. nom. Schilling v. A/S D/S Dannebrog, 320 F.2d 628 (2d Cir. 1963); Gilmore & Black, *supra* § 4–17, at 208 n. 129 and cases there cited; Stephens, Freight 200 (1907). Poore, Charter Parties and Ocean Bills of Lading, § 16 at 51 (1968 ed).[4]

Finally, Compania argues that the district court properly concluded that, to the extent of the unpaid charter hire, the bank held the funds as constructive trustee for the benefit of Compania.

The bank challenges the district court's jurisdiction to entertain a claim for relief on this ground.

As the bank concedes, the district court had jurisdiction in admiralty to adjudicate Compania's claim of a maritime lien upon the money held by the

---

(1849); Wellman v. Morse, 76 F. 573, 575 (1st Cir. 1896).

4. The freights were uncollected when the lien was asserted in *Jackie Hause, supra,* 181 F.Supp. at 167, 169.

bank.[5] The district court regarded the constructive trust claim as raising only "subsidiary" or "derivative" equitable issues "incidental" to Compania's admiralty claim and held that the claim of constructive trust was therefore within the court's admiralty jurisdiction under the doctrine of Swift & Co. Packers v. Compania Columbiana Del Caribe, S. A., 339 U.S. 684, 689–695, 70 S.Ct. 861, 94 L.Ed. 1206 (1950).

*Swift* makes clear that admiralty jurisdiction does not extend to an "independent equitable claim" as distinguished from an "incidental" one. *See Swift, supra*, at 690, 70 S.Ct. 861.

Compania apparently argues that equitable issues are "incidental" rather than "independent" whenever advanced in litigation in which the court's jurisdiction has been properly invoked. Compania points to the statement in Putnam v. Lower, 236 F.2d 561, 569 (9th Cir. 1956), that "where the original jurisdiction is maritime, a court of admiralty may entertain an issue of fraud, mistake, or other equitable claim where either is alleged as affecting the rights of parties to a maritime action." (236 F.2d at 569 (footnote omitted)); *see also* CIA Estrella Blanca, LTDA v. S.S. Nictric, 247 F.Supp. 161, 171 (D.Or. 1965), aff'd 368 F.2d 575 (9th Cir. 1966).

In *Putnam*, however, the equitable issues arose in an admiralty action by way of defense. In *Swift* it was necessary to decide the equitable issues to protect the court's admiralty jurisdiction "from being thwarted by a fraudulent transfer." 339 U.S. at 694, 70 S. Ct. at 868.[6]

Compania's constructive trust claim was not presented by way of defense, and it was unnecessary to resolve it to enable the court to exercise jurisdiction over Compania's admiralty lien claim. Nor was resolution of the equitable issues necessary to afford an adequate remedy on the admiralty claim. If Compania had an admiralty lien on the fund, an effective judgment could have been rendered in Compania's favor whether or not the bank held the money as constructive trustee.

Thus, Compania's constructive trust claim constituted a separate basis for recovery, legally unrelated to Compania's maritime lien claim; and we are inclined to the view that it was therefore an independent equitable claim beyond the admiralty jurisdiction. *Swift, supra*, at 690–691, 70 S.Ct. 861; The Eclipse, 135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269 (1890).

▮ The district court did, however, have jurisdiction over Compania's equitable claim on two other grounds.

The district court had "pendent" jurisdiction over the claim. In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that "pendent" jurisdiction exists when there is a federal claim

"and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim

---

5. It is immaterial to admiralty jurisdiction that the claim of lien ultimately failed. "[T]he question of lien or no lien is not one of jurisdiction, but of merits." The Resolute, 168 U.S. 437, 440, 18 S.Ct. 112, 113, 42 L.Ed. 533 (1897).

6. In Archawski v. Hanioti, 350 U.S. 532, 536, 76 S.Ct. 617, 621, 100 L.Ed. 676 (1956), the claim of unjust enrichment "arose as the result of the breach of a maritime contract." *Accord*, Sword Line Inc. v. United States, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493 (1956). Kossick v. United Fruit Co., 365 U.S. 731, 738, 81 S.Ct. 886, 892, 6 L.Ed.2d 56 (1961), involved breach of an agreement to compensate a seaman's "forbearance to press * * * the full extent of his maritime right to maintenance and care." The Court's statement in Vaughan v. Atkinson, 369 U.S. 527, 530–531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), referred to the power of an admiralty court to grant equitable relief upon a claim itself within admiralty jurisdiction.

must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138 (citation and footnotes omitted) (emphasis in original).[7]

Here, the only question was who was entitled to the fund. Compania advanced two theories to support its claim. One was that it had a maritime lien on the fund—a theory raising issues within the district court's admiralty jurisdiction, as the bank concedes. Compania's second theory was that the bank held the fund as constructive trustee for Compania's benefit. Compania's suit thus joined alternative theories of recovery, one within and one outside federal jurisdiction. Because both arose from "a common nucleus of operative fact"—involving the same parties, the same transactions, the same res, the same amount claimed due—and because Compania would ordinarily be expected to try both in one judicial proceeding, the district court had power, under *Gibbs*, to exercise pendent jurisdiction over the equitable claim.[8]

*Gibbs* made clear, of course, that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants  *  *  *." 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted). But in this case there were good reasons for the federal court to hear the equitable claim. Compania's federal claim could only be asserted in a kind of in rem proceeding exclusively cognizable in a federal district court exercising admiralty jurisdiction. Madruga v. Superior Court, 346 U.S. 556, 560, 74 S.Ct. 298, 98 L.Ed. 290 (1954). In consequence, Compania could submit both claims to the fund only to a federal court. Sound discretion precluded fractionating a dispute over the single res simply because Compania pressed two theories of recovery. *Cf.* Fitzgerald v. United States Lines Co., 374 U.S. 16, 21, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Such a course would have resulted in unnecessary and duplicative litigation, a waste of judicial and private resources, needless delay, and the creation of difficult problems of laches, statutes of limitation, and collateral estoppel.

The district court also had jurisdiction on the second, independent, ground that diversity jurisdiction under 28 U.S.C. § 1332 was established on the record. Compania was a citizen of Panama, the bank a citizen of California, and the amount on controversy exceeded $10,000.

▇ It is immaterial that the district court purported to exercise admiralty rather than pendent or diversity jurisdiction. Troupe v. Chicago, D. & G. Bay Transit Co., 234 F.2d 253, 258 (2d Cir. 1956); Moran Towing & Transp. Co. v. Navigazione Libera Triestina, S.A., 92 F.2d 37, 39 (2d Cir. 1937); Prince Line v. American Paper Exports, 55 F.2d 1053, 1056 (2d Cir. 1932). There was

---

**7.** *Gibbs* involved federal question jurisdiction but there is no reason why the doctrine of pendent jurisdiction should not be equally applicable when jurisdiction over the federal claim is in admiralty. 7A Moore's Federal Practice 3146–47. *Cf.* Romero v. International Terminal Operating Co., 358 U.S. 354, 380–381, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

**8.** It is immaterial to pendent jurisdiction that the federal claim ultimately failed on the merits. *Gibbs, supra,* 383 U.S. at 728, 86 S.Ct. 1130; Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951); Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Geneva Furniture Mfg. Co. v. S. Karpen & Bros., 238 U.S. 254, 258–259, 35 S.Ct. 788, 59 L.Ed. 1295 (1915).

no right to a jury trial since the constructive trust claim was equitable, Black v. Boyd, 248 F.2d 156, 162 (6th Cir. 1957); and even if such a right existed the bank could not complain for it did not demand a jury. *See* United States v. The John R. Williams, 144 F. 2d 451, 454 (2d Cir. 1944); Prince Line, *supra; cf.* The Confiscation Cases, 87 U.S. 92, 109–110, 22 L.Ed. 320 (1873); United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 250 F. 939, 942 (2d Cir. 1918). There is no choice of law problem. Both parties assume that California substantive law governs the constructive trust claim, or at least that state law simply follows general equitable principles.[9]

▪ Turning to the merits, we agree with appellant that the district court's findings do not support imposition of a constructive trust for Compania's benefit.

There is no finding that the bank received or retained the funds by fraud, actual or constructive. There is no finding that a confidential relationship existed between the bank and either Kenray or Compania. There is no finding that the bank misrepresented to Kenray or to Compania that the bank would pay Compania from the proceeds of the letters of credit, or permit Kenray to do so. The drafts and letters of credit were not delivered to the bank by Kenray through mistake or as the result of undue influence, but deliberately and voluntarily. There is no finding that the bank was unjustly enriched by receipt of the proceeds—they were applied to the reduction of Kenray's pre-existing debt to the bank, and left Kenray obligated to the bank for over $200,000.

The district court concluded that Kenray received the Purdy subfreights and the proceeds of the letters of credit as constructive trustee for the benefit of Compania. If this were so, Compania could follow the fund into the bank's hands, for the district court also found that the bank was not a good faith purchaser. R.S. Restitution § 160, comment g, p. 647; V Scott on Trusts, p. 3571 (3d ed. 1967). But there is nothing in the findings that would justify treating Kenray as any more than a debtor of Compania, and mere failure to pay a debt does not create a constructive trust upon the debtor's property for the creditor's benefit. *See* McKee v. Paradise, 299 U.S. 119, 122, 57 S.Ct. 124, 81 L.Ed. 75 (1936); Woodruff v. Coleman, 98 A. 2d 22 (D.C.Mun.Ct. of App.1953).[10]

The district court also concluded that the bank held the funds as constructive trustee for Compania. The substance of the district court findings is that both the bank and Compania were creditors of Kenray, and the bank secured payment out of funds that Kenray otherwise might have used to pay Compania. It does not follow that the creditor who was paid holds the payment as constructive trustee for the benefit of the creditor who was not. *See* Zirker v. Baber, 161 Cal.App.2d 355, 327 P.2d 63 (4th D.C.A. 1958).

Reversed.

---

9. The pertinent California rule is codified in Cal.Civ.Code § 2224, which "is merely an affirmation of the principle applied in equity in the absence of any statutory provision." V Scott on Trusts p. 3429 (3d ed. 1967). Section 2224 reads:
   "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

10. The district court found that "Kenray reasonably anticipated that proceeds from the sale of the scrap would be used in part to pay said charter hire." But a debtor's "mere expectation or hope" that the debt will be paid from a particular source is not sufficient to raise a trust for the creditor's benefit. 1 Bogert, Trusts & Trustees § 19, p. 129 (2d ed. 1965).